BROWN v YOUSIF

Docket No. 135903. Submitted December 8, 1992, at Detroit. Decided March 15, 1993, at 9:40 A.M. Leave to appeal sought.

James J. Brown brought an action in the Macomb Circuit Court against Fakhri J. Yousif, Prang Enterprises, Incorporated, and others, seeking, in part, foreclosure of a secured asset, a specially designated distributor (SDD) liquor license. The plaintiff had sold his business, the Lean and Tender Butcher Shop, Incorporated, to Prang Enterprises. The sale included an SDD and a specially designated merchant (SDM) liquor license. Prang gave the plaintiff a promissory note for a portion of the sale price, which was to be paid in monthly installments. The note provided for a reassignment of the licenses to Lean and Tender in the event of a default. Prang also issued a security agreement and a reassignment agreement as security for Lean and Tender in the event of a default. Lean and Tender filed financing statements for both agreements, perfecting its interests. Prang sold the SDD license to Yousif, and the license was transferred to his store, without the plaintiff's consent. Prang then sold the SDM license to another individual, whose subsequent bankruptcy triggered a default in the payments to the plaintiff. The trial court, Robert J. Chrzanowski, J., granted summary disposition for Yousif, finding that 1979 AC, R 436.1119, promulgated by the Liquor Control Commission, prohibited the creation of a security interest in a liquor license and that the reassignment agreement did not prevent Yousif from purchasing the license, because the agreement was only binding between Lean and Tender and Prang and there was no default in payments at the time of the sale to Yousif. The plaintiff appealed.

The Court of Appeals *held:*

1. The trial court erred in granting summary disposition for Yousif. Article 9 of the Uniform Commercial Code, MCL 440.9101 *et seq.*; MSA 19.9101 *et seq.*, governs and allows the

REFERENCES

Am Jur 2d, Intoxicating Liqours § 117; Liens §§ 22-35; Secured Transactions § 113.

Security interest in liquor licenses. 56 ALR4th 1131.

creation of security interests in liquor licenses in Michigan. Yousif's knowledge of the security interest and reassignment agreement defeats his claim to the SDD liquor license.

2. The Liquor Control Commission did not have the authority to remove liquor licenses from the reach of the UCC when it promulgated 1979 AC, R 436.1119. The plaintiff's security interest in the liquor license is valid and enforceable against Yousif. In addition, under the reassignment agreement, the plaintiff also held an equitable lien superior to any interest of Yousif's.

Reversed and remanded.

1. ADMINISTRATIVE LAW — INTOXICATING LIQUORS — LICENSES — SECURED TRANSACTIONS — UNIFORM COMMERCIAL CODE.

The Liquor Control Commission did not have the authority to remove liquor licenses from the reach of the Uniform Commercial Code when it promulgated an administrative rule in 1979 that prohibited the creation of a security interest in a liquor license; the creation and perfection of a security interest in a liquor license is governed by Article 9 of the Uniform Commercial Code (1979 AC, R 436.1119; MCL 440.9101 *et seq.*; MSA 19.9101 *et seq.*).

2. INTOXICATING LIQUORS — LICENSES — TRANSFER OF LICENSES — REASSIGNMENT AGREEMENTS.

A liquor licensee who sells an establishment and transfers a liquor license to the vendee may enter into a contract with the vendee for reassignment of the liquor license to the vendor in the event of a default on an installment sales contract for the purchase.

*Stauch, Arabo & Dickow, P.C.* (by *Mark B. Dickow*), for the plaintiff.

*Norman C. Farhat & Associates, P.C.* (by *Lester A. Owczarski*), for the defendant.

Before: SHEPHERD, P.J., and BRENNAN and L. P. BORRELLO,* JJ.

L. P. BORELLO, J. Plaintiff, James J. Brown, appeals as of right from a November 21, 1990, order of summary disposition for defendant Fakhri J.

* Circuit judge, sitting on the Court of Appeals by assignment.

Yousif, granted pursuant to MCR 2.116(C)(10).[1] We reverse the trial court's decision and remand for additional proceedings.

On December 6, 1982, plaintiff, James J. Brown, sold his business, the Lean and Tender Butcher Shop, Incorporated (Lean and Tender), to Prang Enterprises, Incorporated (Prang). The sale included a specially designated distributor (SDD) and a specially designated merchant (SDM) liquor license. Prang gave Brown a promissory note for a portion of the price, which was to be paid off in monthly installments. The promissory note provided for a reassignment of the liquor licenses to Lean and Tender in the event of default. Prang also issued a security agreement and a reassignment agreement as security for Lean and Tender in the event of default. Lean and Tender filed financing statements for both agreements with the county and the state, perfecting its interest on December 8, 1982.

On November 15, 1984, Prang sold the SDD liquor license to defendant Fakhri Yousif. Yousif had contacted plaintiff a number of times in order to obtain his consent to the sale, but went ahead with the purchase without plaintiff's consent. The license was transferred to Yousif's store.

In June 1986, Prang sold the SDM license to another individual, David Marriot, whose bankruptcy in 1987 triggered a default in the payments to plaintiff.

In October 1988, plaintiff filed suit against defendants. The only count relevant here involved foreclosure of a secured asset, the SDD liquor license, brought against Yousif.

On November 21, 1990, the trial court granted

---

[1] Although Yousif brought the motion for summary disposition pursuant to both MCR 2.116(C)(8) and (10), the trial court specifically reviewed the motion under MCR 2.116(C)(10).

Yousif's motion for summary disposition, finding that 1979 AC, R 436.1119 (Rule 19), prevented plaintiff from holding a security interest in the liquor license. The trial court further found that the reassignment agreement did not prevent Yousif from purchasing the license, because the agreement was only binding between Lean and Tender and Prang, and there was no default in payments at the time of the sale to Yousif.

On appeal, the trial court's grant of summary disposition is reviewed de novo, because this Court must review the record to determine whether Yousif was entitled to judgment as a matter of law. *Adkins v Thomas Solvent Co,* 440 Mich 293, 302; 487 NW2d 715 (1992).

Plaintiff argues on appeal that Michigan law allows a security interest in a liquor license. Plaintiff points out that the Liquor Control Commission (LCC) has recently amended Rule 19 so that it no longer prohibits the creation of a security interest in a liquor license. Plaintiff argues that the LCC has tacitly agreed through that amendment that Article 9 of the Uniform Commercial Code, MCL 440.9101 *et seq.*; MSA 19.9101 *et seq.*, governs the creation of security interests in liquor licenses.

We agree with plaintiff's position, and hold that Yousif's knowledge of the security interest and reassignment agreement defeats his claim to the SDD liquor license.

Before 1987, Rule 19 prohibited the creation of a security interest in a liquor license, as follows:

> R 436.1119 Retail license; agreements or con-. tracts.
>
> * * *
>
> (3) A security agreement between a buyer and a seller of a licensed retail business, or between a

debtor and a secured party, shall not include the license or alcoholic liquor. [1979 AC, R 436.1119.]

In 1987, Rule 19 was amended to read as follows:

R 436.1119 Retail license; agreements.

Rule 19. (1) An agreement to buy and sell a business licensed to sell alcoholic liquor at retail, wherein there is not a total cash transaction, and which includes both the personal property and the real estate, shall include a separate statement listing the personal property and the real estate and the terms and price of each.

(2) A retail licensee shall not include alcoholic liquor in a security agreement or in a financing statement filed pursuant to Act No. 174 of the Public Acts of 1962, as amended, being § 440.1101 *et seq.* of the Michigan Compiled Laws, and known as the uniform commercial code. [1987 AACS, R 436.1119.]

Thus, the current version of Rule 19 no longer prohibits a liquor license from being the subject of a security interest.

Although we will not apply the new version of Rule 19 retroactively,[2] we do believe that the revision may signal a change of interpretation by the LCC. There have been a number of federal bankruptcy cases that have challenged the authority of the LCC to remove liquor licenses from the orbit of the Uniform Commercial Code. See, e.g., *In re Falbe,* 83 Bankr 436, 439 (ED Mich, 1988); *In re Pike,* 62 Bankr 765, 767-769 (WD Mich, 1986). The district court in *Pike* even went so far as to note:

To the extent that Rule 19 suspends the law in Michigan on perfection of security interests it must be held invalid. [*Id.* at 768-769.]

[2] The former version of Rule 19, 1979 AC, R 436.1119, was applicable at all times relevant to this case.

The district court in the case of *In re Gullifor,* 47 Bankr 450 (ED Mich, 1985), took a different approach, finding that although Rule 19 prevented the creation of a security interest in a liquor license, the holder of a reassignment agreement had an "equitable lien" on the license. *Id.* at 452-453. This approach was criticized in *Pike, supra* at 769-770, n 2, for being too circuitous.[3]

This Court in *Stegenga v Dep't of Treasury,* 179 Mich App 307, 311; 445 NW2d 495 (1989), upheld the validity of former Rule 19, with some reservations, noting that the rule had recently been changed. *Stegenga* involved a question concerning the priority between a tax lien and an interest in a reassignment agreement. To enforce Rule 19 would have prevented the private party from creating a security interest, and would have given priority to the tax lien. This Court held that although Rule 19 was valid generally, the Department of Treasury would not be allowed to benefit from the lcc's promulgation of that rule because both divisions were part of the executive branch of the government of the State of Michigan. We disagree with that panel concerning the validity of Rule 19.

In an attempt to remove some of the uncertainty in this area of the law, we hold that the lcc did not have the authority to remove liquor licenses from the reach of the Uniform Commercial Code when it promulgated Rule 19 in 1979. Therefore, plaintiff's security interest in the liquor license was valid and enforceable against Yousif. Further, under the reassignment agreement, plaintiff also held an equitable lien superior to any interest of

[3] The court in *Pike, supra* at 768-769, also stressed the need for a definitive ruling from the Michigan Supreme Court with regard to this topic, citing numerous conflicting interpretations in the bankruptcy courts.

Yousif. Yousif's knowledge of the reassignment agreement defeats his claim to the liquor license.

In reaching our conclusion, we follow the reasoning of those courts that have held liquor licenses to be within the reach of the Uniform Commercial Code. That is, Article 9 applies to any transaction that is intended to create a security interest in personal property. MCL 440.9102(1)(a); MSA 19.9102(1)(a). Personal property includes general intangibles. *Pike, supra* at 767; *Paramount Finance Co v United States,* 379 F2d 543, 544 (CA 6, 1967). A liquor license is a property interest, *Bundo v Walled Lake,* 395 Mich 679; 238 NW2d 154 (1976), that is subject to the UCC as a general intangible. *Pike, supra* at 767; *Paramount, supra* at 544; *Falbe, supra* at 439; *Underground Flint, Inc v Viro, Inc,* 80 Bankr 87, 89 (ED Mich, 1982). Thus, the creation and perfection of a security interest in a liquor license is governed by the UCC. *Falbe, supra; Pike, supra.*

Although the LCC has been given the authority to control the traffic of alcoholic beverages in Michigan, MCL 436.1; MSA 18.971, it was not given the implicit authority to rewrite the Uniform Commercial Code. *Pike, supra* at 769. This conclusion is supported by MCL 440.1104; MSA 19.1104, which addresses the intended construction against any implied amendments of the Uniform Commercial Code:

> This act being a general act intended as a unified coverage of its subject matter, no part of it shall be deemed to be impliedly repealed by subsequent legislation if such construction can reasonably be avoided.

Although the LCC was given the general authority to implement its goal of controlling the traffic of

alcohol, MCL 440.1104; MSA 19.1104 dictates that the enabling authority not be interpreted so as to allow the LCC to repeal or amend the Uniform Commercial Code. Thus, we agree that the LCC could not amend the Uniform Commercial Code with the implementation of its Rule 19 in 1979. Therefore, plaintiff has a valid security interest in the SDD liquor license that is superior to any interest of Yousif.

Further, we hold on independent grounds that plaintiff has an equitable lien on the SDD license from the reassignment agreement made between plaintiff and defendant Prang. Such reassignment agreements are valid in Michigan. *Stegenga, supra* at 310-311. The record reveals that Yousif was clearly aware of plaintiff's interest in the liquor license via the reassignment agreement. Yousif even sought plaintiff's consent for the sale, which was denied. Yousif went ahead with the deal with full knowledge of plaintiff's equitable interest. Therefore, we also hold that plaintiff's equitable interest would provide an independent basis for recovery even if plaintiff had failed (which he did not) to properly perfect his security interest. In accord, see *Gullifor, supra* at 452.

We note that it appears that our decision creates a new rule of law pursuant to Administrative Order Nos. 1990-6, 436 Mich lxxxiv, and 1991-11, 439 Mich cxliv.

Reversed and remanded for further proceedings consistent herewith.