BROWN v YOUSIF

Docket No. 96311. Argued April 5, 1994 (Calendar No. 4). Decided
    May 31, 1994.

James J. Brown brought an action in the Macomb Circuit Court
    against Fakhri J. Yousif, Julius Prang, and others, seeking,
    inter alia, to foreclose on a specially designated distributor
    liquor license against Yousif pursuant to a security agreement
    and reassignment clause. Brown had sold his business to Prang
    Enterprises, Incorporated, including specially designated dis-
    tributor (SDD) and specially designated merchant (SDM) liquor
    licenses. Prang gave Brown a security agreement with regard
    to fixtures, furniture, and equipment, as well as a reassignment
    of these items, including the liquor licenses, subject to approval
    by the Liquor Control Commission. Brown filed a financing
    statement covering all the trade fixtures, furniture, and equip-
    ment, but did not mention the liquor licenses or a like term
    such as general intangibles. Prang then sold the SDD license to
    Yousif, who had actual knowledge of Brown's security interest
    before the sale, despite Brown's refusal to consent, and trans-
    ferred the SDM license to David Marriot by way of a promissory
    note. When Marriot filed for bankruptcy and defaulted in his
    payments to Prang, Prang/Marriot stopped making payments
    to Brown, causing Brown to file suit against Yousif and others,
    with the instant appeal addressing only the suit against Yousif.
    The court, Robert Chrzanowski, J., granted summary disposi-
    tion for Yousif on the basis of Rule 19 of the Liquor Control
    Commission, which prohibits the creation of a security interest
    in a liquor license. The Court of Appeals, SHEPHERD, P.J., and
    BRENNAN and L. P. BORRELLO, JJ., reversed, reasoning that the
    commission rule could not circumvent a validly perfected secu-
    rity interest under article 9 of the Uniform Commercial Code
    (Docket No. 135903). Yousif appeals.

    In a unanimous opinion by Justice RILEY, the Supreme Court
    held:

    Rule 19 of the Liquor Control Commission, which prohibits
    the creation of a security interest in a liquor license, is ineffec-

REFERENCES
Am Jur 2d, Secured Transactions § 113.
Security interests in liquor licenses. 56 ALR4th 1131.

tive with regard to a valid security interest under article 9 of the Uniform Commercial Code.

1. The security agreement between Prang and Brown created an effective security interest in the SDD license pursuant to MCL 440.9203(1); MSA 19.9203(1). While perfection is generally needed to enforce a security agreement covering general intangibles against other secured creditors, it is not needed against transferees who either did not give value or had knowledge of the security interest. In this case, Yousif admitted that the liquor license is a general intangible and that he is not a secured party. However, Yousif is a transferee who gave value for the license and had actual knowledge of the security interest. Therefore, in accordance with § 9301(1)(d) of the UCC, the plaintiff has an enforceable security interest against the defendant, despite his lack of proper perfection.

2. The Liquor Control Commission has exclusive authority to control liquor trafficking, but this authority does not allow it to invalidate by administrative rule a portion of a law of general applicability such as article 9 of the UCC. The exceptions to article 9 do not include a liquor license and do not exclude rules set by the commission or liquor trafficking in general. Thus, the plaintiff has an enforceable security interest in the SDD liquor license and may foreclose on this interest and seek reassignment in accordance with applicable law, subject to approval by the commission.

Affirmed in part, vacated in part, and remanded.

198 Mich App 667; 499 NW2d 446 (1993) affirmed in part and vacated in part.

*Stegenga v Dep't of Treasury,* 179 Mich App 307; 445 NW2d 495 (1989), overruled.

SECURED TRANSACTIONS — UNIFORM COMMERCIAL CODE — LIQUOR
    LICENSES — LIQUOR CONTROL COMMISSION RULES.

    Rule 19 of the Liquor Control Commission, which prohibits the creation of a security interest in a liquor license, is ineffective with regard to a valid security interest under article 9 of the Uniform Commercial Code (MCL 440.9203[1]; MSA 19.9203[1], 1979 AC, R 436.1119[3], 1984 AACS, R 436.1119[3], 1987 AACS, R 436.1119[2]).

*Stauch, Arabo, Dickow & Ward, P.C.* (by *Mark B. Dickow*), for the plaintiff.

*Norman C. Farhat & Associates, P.C.* (by *Norman C. Farhat*), for the defendant.

RILEY, J. In this case, we must decide whether a person can have an enforceable security interest in a liquor license despite a Liquor Control Commission rule prohibiting the creation of a security interest in a liquor license. We hold the LCC rule ineffective with regard to a valid security interest under article 9 of the Uniform Commercial Code and therefore affirm the Court of Appeals decision.

I

In 1982, plaintiff James J. Brown sold his business, Lean and Tender Butcher Shop, to Prang Enterprise, Incorporated. Included in the sale was a specially designated distributor (SDD) and a specially designated merchant (SDM) liquor license. Prang paid part of the purchase price in cash and financed the remaining portion with a promissory note. However, in order to secure the payment of the note in the event of default, Prang gave plaintiff a security agreement with regard to fixtures, furniture, and equipment, as well as a reassignment of these items, including reassignment of the SDM and SDD liquor licenses, subject to approval by the LCC. Plaintiff then filed a financing statement in the appropriate offices covering "[a]ll the trade fixtures, furniture and equipment, . . . including all the after acquired goods and chattels, which replace existing equipment only." However, it did not mention the liquor licenses or a like term, i.e., "general intangibles."

Subsequently, in 1984, Prang entered into negotiations with defendant Fakhri J. Yousif for the sale of the SDD liquor license. During this time, defendant had actual knowledge of the security interest as illustrated by defendant's attempt to obtain plaintiff's consent to the transfer before the

sale.[1] Despite plaintiff's refusal to consent to the transfer, defendant purchased the license and transferred it to his store.

In 1986, Prang transferred the remaining license, the SDM, to a David Marriot by way of a promissory note. However, when Marriot filed for bankruptcy in 1987 and defaulted in his payments to Prang, Prang/Marriot stopped making payments to plaintiff. This gave rise to plaintiff's suit against Prang and defendant. With regard to Prang, plaintiff alleged six[2] theories of liability, most of which related to their contract. However, plaintiff eventually settled with Prang after accepting a mediated judgment for $25,000. On the other hand, plaintiff's suit against defendant sought to foreclose on the SDD liquor license pursuant to the security agreement and reassignment clause. In response, defendant moved for summary disposition relying on plaintiff's failure to comply with the statute of frauds, the statute of limitations, and, primarily, the LCC's rule (Rule 19) which stated:

> A security agreement between a buyer and a seller of a licensed retail business, or between a debtor and a secured party, *shall not include the license* or alcoholic liquor. [1979 AC, R 436.1119(3). Emphasis added.][3]

---

[1] Defendant did not plead or deny knowledge of the security interest.

[2] (1) breach of contract; (2) piercing the corporate veil; (3) fraudulent misrepresentation; (4) innocent misrepresentation; (5) silent fraud; and (6) conspiracy.

[3] Shortly after the above transfer between Prang and defendant, the rule was amended to state:

> A person shall not include a license in a security agreement and shall not list a license in a financing statement filed pursuant to Act No. 100 of the Public Acts of 1913, as amended, being § 440.1101 *et seq.* of the Michigan Compiled Laws [MSA 19.1101 *et seq.*], and being known as the uniform commercial code. [1984 AACS, R 436.1119(3).]

Relying on Rule 19, the trial judge granted defendant's motion for summary disposition. However, he rejected defendant's statute of frauds and statute of limitations arguments in addition to stating that the reassignment provision might have been enforceable between plaintiff and Prang, but not between plaintiff and defendant.

On appeal, the Court of Appeals reversed, reasoning that the LCC rule could not circumvent an article 9 security interest, that it held was validly perfected in the liquor license. Moreover, the Court relied on various bankruptcy court decisions in holding that the LCC does not have authority to circumvent the UCC. Alternatively, however, the Court held that plaintiff was entitled to relief by way of an equitable lien on the SDD license, which came directly from the reassignment clause of which defendant had knowledge. 198 Mich App 667; 499 NW2d 446 (1993).

We granted leave to appeal.[4]

II

Before turning to the enforceability of Rule 19, we find it necessary to clarify plaintiff's right and priority to the liquor license under article 9. We begin by noting that defendant only attacks the perfection of this interest, i.e., plaintiff did not

In 1987, however, the rule was changed again and now states:

> A retail licensee shall not include alcoholic liquor in a security agreement or in a financing statement filed pursuant to Act No. 174 of the Public Acts of 1962, as amended, being § 440.1101 *et seq.* of the Michigan Compiled Laws [MSA 19.1101 *et seq.*], and known as the uniform commercial code. [1987 AACS, R 436.1119(2).]

Regardless of these amendments, at the time of default, the rule prohibited security interests in liquor licenses.

[4] 444 Mich 913 (1994).

attach to the financing statement the reassign-
ment agreement between plaintiff and Prang and
the financing statement itself did not list the
license or a general intangible as a collateral.[5]
Defendant does not, nor did he below, contend that
plaintiff did not have a valid security interest via
the security agreement signed by Prang.[6] Nonethe-
less, we find that the security agreement created
an effective security interest in the liquor license
pursuant to MCL 440.9203(1); MSA 19.9203(1).[7]

Having found a valid security interest in the
liquor license, we turn to whether plaintiff was
required to properly file a financing statement that
either listed the license as collateral or listed the
term general intangibles in order to enforce this

---

[5] Plaintiff contends that defendant is raising this issue for the first
time on appeal. Indeed, a review of the record may support this
contention, except for one statement in oral argument in the lower
court: "The UCC file indicates that the file is only for all the trade
fixtures, furniture and equipment of Lean and Tender Butcher
Shop. . . . [T]he prime allegation of the Plaintiff that he had a valid
lien on the liquor license and the UCC filing indicates that that is not
the case." In light of our ultimate resolution of this issue, we find it
unnecessary to premise our ruling on the lack of preservation. Simi-
larly, we find it unnecessary to rule on defendant's argument, made
for the first time in oral argument before this Court, that plaintiff
failed to file a continuation statement pursuant to MCL 440.9403;
MSA 19.9403.

[6] Indeed, at oral argument, defense counsel admitted attacking only
the validity of the UCC filing, i.e., that the UCC filing did not list the
liquor license or the term general intangible. Therefore, he argued,
Brown did not properly perfect his security interest and accordingly
cannot enforce this security interest against Yousif.

[7] To satisfy § 9203(1), there must: (1) be a written agreement signed
by the debtor; (2) that adequately describes the collateral; (3) the
secured party must give value; and (4) the debtor must acquire rights
in the collateral. The facts indicate that (1), (3), and (4) are satisfied.
Moreover, the second requirement is satisfied by the security agree-
ment's description of the license, albeit in the reassignment para-
graph. Cf. *In re Boufsko, Inc,* 44 Bankr 98 (ED Mich, 1984). Indeed,
we note that defendant does not plead that he was misled after
reading it, or that he relied on this allegedly misleading agreement. 2
White & Summers, Uniform Commercial Code (3d ed), § 24-3, p 297.
Instead, defendant contacted plaintiff regarding his consent to the
transfer, knowing that plaintiff had a valid security interest in the
license.

agreement against defendant. While perfection is generally needed to enforce a security agreement covering general intangibles against other secured creditors, it is not needed against transferees who either did not give value or had knowledge[8] of the security interest.[9] See Felsenfeld, *Knowledge as a factor in determining priorities under the Uniform Commercial Code,* 42 NYU L R 246 (1967). MCL 440.9301(1)(d); MSA 19.9301(1)(d) provides:

> Except as otherwise provided in subsection (2), an unperfected security interest is subordinate to the rights of . . . [i]n the case of accounts and *general intangibles,* a person who is not a secured party and who is a transferee to the extent that the person gives value without knowledge of the security interest and before it is perfected. [Emphasis added.][10]

In the instant case, it is undisputed that a liquor

---

[8] MCL 440.1201(25); MSA 19.1201(25).

[9] Cf. *In re Komfo Products Corp,* 247 F Supp 229, 235 (ED Pa, 1965); *Resolution Trust Corp v Real Estate Investments, Inc,* 17 Kan App xxii; 831 P2d 1344; 1992 Kan App LEXIS 434 (1992) (decision without published opinion).

[10] The applicability of § 9301(1)(d) reflects a rather unique situation and, accordingly, is rarely interpreted by the courts. It determines the enforceability of a security interest on the basis of knowledge rather than perfection. As in the instant case, it is rather unusual that a person will have actual knowledge of a security interest, absent the filing of a financing statement. Further, it is even more unusual that this issue arises in a nonbankruptcy setting. Usually, the issue of knowledge arises when a person holding an unperfected security interest is attempting to defeat the bankruptcy trustee under § 9301(1)(b). However, in bankruptcy, courts have interpreted § 9301(1)(b) to require that *all* creditors must be without knowledge of the security interest. See *In re Komfo Products Corp,* n 9 *supra* at 234-236. In the instant case, neither party is in bankruptcy; therefore, it is unnecessary to determine whether all other creditors had knowledge. Instead, we apply § 9301(1)(d) in a nonbankruptcy setting, involving a transferee as opposed to a creditor, with the dispositive inquiry whether defendant had knowledge of the security interest. Accordingly, applying the plain and unambiguous language of § 9301(1)(d), we conclude that the requirements are met and that defendant had actual knowledge of the security interest.

license is a general intangible;[11] it certainly is personal property and something of value as evidenced by the sale of the license for $48,342.98. See, e.g., *Bundo v Walled Lake*, 395 Mich 679; 238 NW2d 154 (1976); *Paramount Finance Co v United States*, 379 F2d 543 (CA 6, 1967). Indeed, defense counsel admitted at oral argument that a liquor license is a general intangible. Moreover, defendant is not a secured party, but is a transferee because of the transfer from Prang (transferor) to defendant (transferee).[12] Further, despite the giving of value, defendant had actual knowledge of the security interest as evidenced by his contact with plaintiff before the transfer.[13] Therefore, in accordance with the plain and unambiguous terms of § 9301(1)(d), plaintiff has an enforceable security interest against defendant despite his lack of proper perfection.[14]

The question remains, however, whether a valid security interest under article 9 can be enforced in light of the LCC rule prohibiting a lien on a liquor license.

---

[11] "General intangibles" means any personal property (including things in action) other than goods, accounts, chattel paper, documents, instruments, and money.

[12] See, generally, *Petron Trading Co v Hydrocarbon Trading & Transport Co, Inc*, 663 F Supp 1153, 1161 (ED Pa, 1986).

[13] We note that defendant never challenged plaintiff's allegation that defendant took the license with knowledge of plaintiff's security interest, despite numerous opportunities to do so.

[14] This conclusion is consistent with the policy behind filing a financing statement—"The primary function of the description in 9-402 [financing statement] is to put third parties on notice" of a possible security interest. White & Summers, n 7 *supra*, § 24-4, pp 305-306. In the instant case, defendant already had notice of the security agreement, and therefore § 9301(1)(d) gives plaintiff priority over this defendant: "[T]he existence of knowledge as a factor is clearly interjected [in § 9301(1)(d)], and it seems appropriate as a matter of principle: If the transferees knew of the lien before they acquired the assets, it is reasonable that they be subject to it." Felsenfeld, *supra* at 257.

III

While several bankruptcy courts[15] in Michigan have addressed this issue, it is a question of first impression before this Court. Therefore, we begin by analyzing the LCC's authority which is derived from the Michigan Constitution and statute. Const 1963, art 4, § 40 provides in part:

Except as prohibited by this section, (t)he legislature may by law establish a liquor control commission which, subject to statutory limitations, shall exercise complete control of the alcoholic beverage traffic within this state, including retail sales thereof. The legislature may provide for an excise tax on such sales. Neither the legislature nor the commission may authorize the manufacture or

---

[15] See, generally, 56 ALR4th 1131, § 11, pp 1143-1145. The first line of cases simply holds that an article 9 security interest may be taken in a liquor license. See *In re Ratcliff Enterprises,* 44 Bankr 778 (ED Mich, 1984) (the court refused to consider the validity of Rule 19 because the facts of the case did not necessitate such a ruling); *In re McCormick,* 26 Bankr 869 (ED Mich, 1983) (before formal adoption of Rule 19); *Underground Flint, Inc v Viro, Inc,* 80 Bankr 87 (ED Mich, 1982) (before formal adoption of Rule 19); *In re Matto's, Inc,* 9 Bankr 89 (ED Mich, 1981) (before formal adoption of Rule 19). See also *In re Boufsko,* n 7 *supra; In re Tittabawassee Investment Co v Hidden Hollow Golf Course, Inc,* 831 F2d 104 (CA 6, 1987); *In re American Way Food Service Corp v Kempf,* 48 Bankr 79 (WD Mich, 1985) (before formal adoption). At least one court has held that, in bankruptcy proceedings, Rule 19 must give way to the priority rules in the UCC. See *Andriacchi's, Inc v Pike,* 62 Bankr 765 (WD Mich, 1986). See also *In re Falbe,* 83 Bankr 436 (ED Mich, 1988) (a federal tax lien takes priority over unperfected security interest in liquor license). On the other hand, one bankruptcy court has held that Rule 19 is superior to article 9 and thereby precludes the taking of a security interest in a liquor license. *In re Rudy's Inc,* 23 Bankr 1 (ED Mich, 1981) (we note that the court erroneously referred to Rule 19 as a statute in reaching its result). Finally, some courts have avoided Rule 19's application by premising their rulings on their equitable powers in bankruptcy, or more specifically, an equitable lien theory: it would be unfair to deny this interest in light of Rule 19 which specifically prohibited an article 9 interest. See *In re Moisson,* 51 Bankr 227 (ED Mich, 1985); *In re Gullifor,* 47 Bankr 450 (ED Mich, 1985); *In re Bernie's, Inc,* 44 Bankr 296 (ED Mich, 1983); *In re Beefeaters, Inc,* 27 Bankr 848 (WD Mich, 1983) (before formal adoption of Rule 19).

sale of alcoholic beverages in any county in which a majority of the electors voting thereon shall prohibit the same.

Moreover, MCL 436.1(2); MSA 18.971(2) provides in part:

> Except as otherwise provided in this act, the commission shall have the sole right, power, and duty to control the alcoholic beverage traffic and traffic in other alcoholic liquor within this state, including the manufacture, importation, possession, transportation and sale thereof.

Clearly, these provisions give the LCC exclusive authority to control liquor trafficking. However, the question in this case is whether the LCC has the authority to prohibit the creation of a security interest governed by article 9 of the UCC. Despite the LCC's plenary authority to regulate liquor trafficking, we are persuaded that this authority does not allow the LCC to invalidate by *administrative rule* a portion of another duly enacted *law,* i.e., the UCC. Indeed, the UCC was intended as a law of general applicability that cannot be impliedly repealed by statute, let alone by administrative rule:

> This act being a general act intended as a unified coverage of its subject matter, no part of it shall be deemed to be impliedly repealed by subsequent legislation if such construction can reasonably be avoided. [MCL 440.1104; MSA 19.1104.]

Moreover, the clear language of article 9 indicates that the Legislature intended the law to be of general applicability, covering all forms of security interests in personal property, regardless of its form, except for those provided in MCL 440.9104;

MSA 19.9104.[16] Indeed, the exceptions to article 9 as set forth in § 9104 *do not include* a liquor license and *do not exclude* rules set by the LCC. Moreover, § 9203(2), addressing the enforceability of a security interest and the applicability of other laws, does not specifically subject article 9 to laws affecting the LCC or liquor trafficking in general. Therefore, we conclude that article 9 grants plaintiff an enforceable security interest in this liquor license and that Rule 19 must give way to these duly enacted provisions of article 9, a law of general applicability.[17] Accordingly, we hold that plaintiff has an enforceable security interest in this SDD liquor license and may foreclose on this interest and seek reassignment in accordance with applicable law, subject to approval by the LCC.[18]

---

[16] MCL 440.9102; MSA 19.9102 provides:

(1) Except as otherwise provided in section 9104 on excluded transactions, this article applies;

(a) To any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures including goods, documents, instruments, general intangibles, chattel paper or accounts; and also

(b) To any sale of accounts or chattel paper.

[17] To the extent that *Stegenga v Dep't of Treasury,* 179 Mich App 307, 311; 445 NW2d 495 (1989), upheld that validity of Rule 19, we overrule that decision. In *Stegenga,* the Court did not fully consider the validity of Rule 19, primarily because of its conclusion that "the government is estopped from denying the validity of its own rule where to hold the rule invalid would work to the detriment of a private party." *Id.* at 312. While in the instant case we are dealing with two private parties, we have the opportunity to directly consider the validity of Rule 19, and after reviewing the LCC's powers along with the legislative intent behind the UCC, we conclude that Rule 19 is invalid in its attempt to circumvent the provisions of article 9.

[18] While the LCC has the ultimate power to approve the reassignment of this license to plaintiff, the parties have not argued or addressed the effect of a possible refusal to permit the reassignment of this license to plaintiff. Accordingly, we do not address the merits of any future LCC decision or whether this implicates any right to proceeds in the liquor license.

IV

In light of our holding that plaintiff has an enforceable security interest under article 9 and our conclusion that Rule 19 must give way to these provisions, we do not find it necessary to consider plaintiff's alternative, equitable lien theory. Accordingly, we vacate the Court of Appeals decision with regard to this equitable lien theory, but affirm its decision, albeit on different grounds, regarding plaintiff's enforceable security interest under article 9.[19]

V

We hold that § 9301(1)(d) gives plaintiff an enforceable security interest against this defendant because defendant purchased the collateral with knowledge of plaintiff's security interest. Moreover, we hold Rule 19 invalid to the extent that it conflicts with the provisions of article 9, a law of general applicability. Accordingly, we remand to the trial court for proceedings consistent with this opinion.

CAVANAGH, C.J., and LEVIN, BRICKLEY, BOYLE, GRIFFIN, and MALLETT, JJ., concurred with RILEY, J.

---

[19] Moreover, our decision renders defendant's statute of frauds argument moot because "a security agreement is effective according to its terms between the parties, against purchasers of the collateral and against creditors." MCL 440.9201; MSA 19.9201. See also § 9301(1)(d).