# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 02-4052

GP CREDIT CO., LLC,

*Plaintiff-Appellee,*

v.

ORLANDO RESIDENCE, LTD.,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 01-C-693—**Lynn Adelman**, *Judge.*

_____

ARGUED SEPTEMBER 15, 2003—DECIDED NOVEMBER 18, 2003

_____

Before POSNER, KANNE, and ROVNER, *Circuit Judges.*

POSNER, *Circuit Judge.* Section 1655 of the Judicial Code confers in rem jurisdiction on the federal courts by directing the district court, in a suit "to enforce any lien upon or claim to, or to remove any incumbrance or lien or cloud upon the title to, real or personal property within the district," to order a defendant who cannot be served within the state and will not appear voluntarily to appear and plead. The principal question that we are asked to decide is whether personal property that consists of an interest in a claim that is being prosecuted in a lawsuit shall be deemed to be "within the district" in which the owner of the interest resides.

The question arises in a context of daunting complexity; we'll simplify ruthlessly. Back in 1992, the defendant, Orlando, sued the Nashville Lodging Company (NLC) in a Tennessee state court in a dispute over a hotel. After a protracted proceeding, a judgment for $800,000 was entered in Orlando's favor in September 2000. The previous year NLC had granted a security interest to the plaintiff in the present case, GP Credit, in "any and all personal property" owned by NLC. (It had done that to secure a $1 million loan that it had obtained from GP Credit.) NLC's personal property included a lawsuit that it had brought against a company called Metric, coincidentally involving the same hotel as Orlando's suit against NLC. NLC's suit against Metric was and is pending in a Tennessee state court, which when GP Credit obtained its security interest had determined Metric's liability to be at least $5 million but had not, and still has not, rendered a final judgment, for reasons that are unclear.

In May 2001, which is to say after Orlando had obtained its judgment against NLC in the Tennessee court, GP Credit, claiming that NLC had failed to repay the $1 million loan, foreclosed its security interest in NLC's personal property and at the foreclosure sale bought all that property, including, therefore, NLC's suit against Metric. Three months later, Orlando persuaded the Tennessee trial judge who had rendered judgment in its favor against NLC to appoint a receiver to collect and hold, pending the final resolution of the Metric suit, any proceeds of the suit that GP Credit, as NLC's successor in interest, might receive, so that there would be money available to satisfy Orlando's judgment. And by this time Orlando had registered the judgment in the county in which it had been rendered, served on NLC a writ of execution of the judgment, and moved under Tennessee's postjudgment collection statute to subject NLC's assets

to satisfaction of the judgment, a motion that the Tennessee trial judge denied, however.

Meanwhile, GP Credit had brought the present suit in the federal district court for the Eastern District of Wisconsin, which is its domicile, under section 1655 to clear its title to the Metric proceeds. Federal jurisdiction was predicated on diversity of citizenship; section 1655 confers in rem jurisdiction on the federal courts only in cases that would be within federal jurisdiction if brought as in personam suits. *Dluhos v. Floating & Abandoned Vessel, Known as "New York*," 162 F.3d 63, 72 (2d Cir. 1998); *Georgia Central Credit Union v. Martin G.M.C. Trucks, Inc.*, 622 F.2d 137 (5th Cir. 1980) (per curiam); 14 Charles A. Wright et al., *Federal Practice and Procedure* § 3631, p. 4 (3d ed. 1998). The difference between the two types of jurisdiction corresponds to the difference between subject-matter jurisdiction and personal jurisdiction. A court must have jurisdiction over subject matter but also over the person of the defendant. Section 1655 enables a federal court that has subject-matter jurisdiction to obtain a jurisdiction over a thing as distinct from a person.

Two old cases of ours are sometimes thought (see, e.g., *id.*, § 3632, pp. 33-34), to dispense with the requirement of establishing diversity, or some other basis of federal subject-matter jurisdiction, in a case brought under section 1655. *Graff v. Nieberg*, 233 F.2d 860, 862-63 (7th Cir. 1956); *Huntress v. Estate of Huntress*, 235 F.2d 205, 208 (7th Cir. 1956). This cannot be; and it seems that all the two cases meant to hold is that a suit under section 1655, being in rem, need not always be brought in a district in which either the plaintiff or the defendant resides, though it must be brought in the district in which the res (the property at issue) is located. *Id.*; *Graff v. Nieberg*, *supra*, 233 F.2d at 862-63.

While GP Credit's suit in the Eastern District of Wisconsin was pending, NLC appealed the $800,000 judgment in Orlando's suit against it, and the Tennessee appellate court reversed. It agreed, however, with everything in the trial judge's decision except her rejection of NLC's statute of limitations defense, and it remanded the case for a trial on that issue alone. The trial has not yet been conducted, or even scheduled. So Orlando still does not have a final, enforceable judgment against NLC; nevertheless it contends that the Tennessee proceedings bar GP Credit's quiet-title suit.

In that suit, the suit out of which the present appeal arises, the district judge, disagreeing with Orlando, after satisfying himself that he had in rem jurisdiction because the res—the lawsuit against Metric—is located in the Eastern District of Wisconsin, held in a subsequent opinion that GP Credit has a clean title. The judge found that Orlando had not acquired a lien in the Metric suit by virtue of the later-reversed judgment of the Tennessee state trial court, the issuance of a writ of execution of the judgment, the motion to subject NLC's assets to payment of the judgment, the motion to appoint and appointment of the receiver to hold any proceeds of the suit, or the ruling by the Tennessee appellate court that Orlando describes as upholding the trial judge's judgment conditional on the resolution of the statute of limitations issue in Orlando's favor on remand.

So we have two issues to decide—the district court's jurisdiction and, if we find that it had jurisdiction, whether GP Credit is entitled to a clear title to the proceeds of the Metric suit. The second issue divides into two as well, because GP Credit might lack title even if Orlando has no lien.

The general rule is that intangible personal property is "located" in its owner's domicile, *In re Lambert*, 179 F.3d 281, 285 (5th Cir. 1999); *Robertson v. Robertson*, 803 F.2d 136,

137 (5th Cir. 1986); *Gordon v. Holly Woods Acres, Inc.*, 328 F.2d 253, 255 (6th Cir. 1964), although there are exceptions, such as where the documents of title are in a state that is not the owner's domicile. *First Trust Co. of St. Paul v. Matheson*, 246 N.W. 1, 3 (Minn. 1932); *Restatement (Second) of Conflict of Laws* § 63 (1971); 4A Wright et al., *supra*, § 1071, pp. 295-96. We have put "located" in scare quotes because intangibles, having no "body," have no spatial location. But creditors who want to file liens against intangible personal property have to file their liens in a place, or places, so the property has to be given a fictitious location. The owner's location is the sensible choice and the one made by the Uniform Commercial Code § 9-301(1); see Tenn. Code Ann. § 47-9-103, *Official Comments on the UCC*, § 5(a) (2000); Wis. Stat. § 409.103, *Official Comments on the UCC*, § 5(a) (2000). The owner's location is physical, not metaphysical, and is easily determined.

One form of intangible property is a "chose in action," which in its classic sense is a legal claim, that is, something on which an "action" (a lawsuit) might be founded, such as a right to recover a debt. *Applied Medical Technologies, Inc. v. Eames*, 44 P.3d 699, 701 (Utah 2002); *Prodigy Centers/Atlanta v. T-C Associates*, 501 S.E.2d 209, 212 (Ga. 1998); *Can Do, Inc. Pension & Profit Sharing Plan v. Manier, Herod, Hollabaugh & Smith*, 922 S.W.2d 865, 866-67 (Tenn. 1996); *United States v. Central Bank*, 843 F.2d 1300, 1304 (10th Cir. 1988); *United States v. Goldberg*, 362 F.2d 575, 577 (3d Cir. 1966). GP Credit's interest in the Metric suit is a classic chose in action; GP Credit stepped into NLC's shoes by virtue of its purchase at the foreclosure sale of NLC's property and so became the claimant in that suit. There are dark hints of collusion in the acquisition and foreclosure of GP Credit's security interest in NLC's claim against Metric, arising from the fact that the principals of the respective companies (GP

Credit and NLC) happen to be married to each other, but they are merely hints and can play no role in our decision.

The Wisconsin supreme court has held, in an oldish case but one that has not been overruled or undermined by subsequent decisions, that a chose in action is to be treated for locational purposes the same as other intangible property and thus as having its location in the state of the owner's domicile. *Florida Realty Finance & Security Co. v. Chris. Schroeder & Sons Co.*, 272 N.W. 38, 39-40 (Wis. 1937). But we agree with Orlando that whether a particular form of personal property is "within" a given federal district for purposes of determining federal jurisdiction under 28 U.S.C. § 1655 is a question of federal law (as assumed in *Kohagen v. Harwood*, 185 F.2d 276, 277-80 (7th Cir. 1950), and various earlier cases, yet never so far as we can determine actually held), rather than being governed by the law of the state where the case is filed (Wisconsin in this case), or perhaps by some other state's law. GP Credit seems to think it can sue to quiet title in any federal district that is in a state that would deem the property sought to be cleared of encumbrances to be located there. That approach would make it unnecessarily difficult for lien creditors to know where they might have to defend against a quiet-title action. It would also make it difficult for the owners of choses in action to know where they might have to defend against a suit to impose a lien on such property.

There is no settled federal rule defining the site of a chose in action for purposes of section 1655, and we are reluctant to rely on cases in which the site of intangible property is determined for unrelated purposes, such as taxation. Looking beyond Wisconsin for cases bearing directly on our issue, we discover that most cases do hold in agreement with the Wisconsin supreme court that the location of the legal claim is the domicile of the claim's owner. See, e.g., *In*

*re Howard Marshall Charitable Remainder Annuity Trust*, 709 So. 2d 662, 668-69 (La. 1998); *In re Estate of Coleman*, 98 N.W.2d 784, 788 (N.D. 1959); *In re Guardianship of Fleckenstein*, 589 S.W.2d 788, 790 (Tex. App. 1979). That seems to us indeed the best rule and the one therefore that should govern suits under section 1655. Unless there is to be a free for all, the alternative to the owner's domicile would presumably be where the suit had been filed. But that would work only if a suit *had* been filed, and it might not have been—a cause of action arises, obviously, before suit is brought and often, depending on the statute of limitations, long before. Or the suit might have been filed but then transferred to another jurisdiction, or dismissed without prejudice and refiled in another jurisdiction. We can imagine creditors chasing the suit all over the country. There is no reason for the courts to set sail on this sea of troubles. Nor would it be a tenable position that while creditors should for the reasons just explained sue in the domicile of the claim's owner to impose a lien, owners of claims have to sue elsewhere to clear title. The statute treats suits to impose and to clear liens identically.

So the district court had jurisdiction over the res. This is true even though the Tennessee court asserted jurisdiction first, when the Tennessee judge created the receivership to protect Orlando, and notwithstanding the principle that whatever court, federal or state, first obtains possession of the res can enjoin any other court from wresting possession away from it. *Kline v. Burke Construction Co.*, 260 U.S. 226, 229 (1922); *Knaefler v. Mack*, 680 F.2d 671, 675 (9th Cir. 1982). (The common sense behind the rule is apparent.) When GP Credit filed its quiet-title action in Wisconsin, the Tennessee court indicated that it would abide by the result of that action, in effect ceding at least concurrent jurisdiction to the district court in Wisconsin. Cf. *Fischer v. American United Life*

*Ins. Co.*, 314 U.S. 549, 555 (1942). Hence the district court was not interfering with the Tennessee proceeding when it determined who owned the res. *Lydick v. Fischer*, 135 F.2d 983, 985 (5th Cir. 1943). But in any event the order of the Tennessee court appointing a receiver was void under Tennessee law, because issued after the trial judge had lost jurisdiction by NLC's filing its notice of appeal. *Gentry v. Gentry*, 924 S.W.2d 678, 680 (Tenn. 1996); *First American Trust Co. v. Franklin-Murray Development Co.*, 59 S.W.3d 135, 141-42 and n. 7 (Tenn. App. 2001). So the Tennessee court did not obtain jurisdiction over the res after all.

Having resolved the jurisdictional issue, we can proceed now to the merits, and thus consider whether the district court was right to extinguish Orlando's lien. Orlando claims to have a judgment lien. But it cannot, because it has no judgment. It has a ruling from the Tennessee appellate court that constitutes the law of the case on the violation of Orlando's rights by NLC and the damages that Orlando sustained as a result of that violation. *Ladd by Ladd v. Honda Motor Co.*, 939 S.W.2d 83, 90-91 (Tenn. App. 1996). But under Tennessee law, which determines the effect of a Tennessee judgment on a case in a federal court, *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985), an interlocutory ruling is not a judgment. *Frank Rudy Heirs Associates v. Sholodge, Inc.*, 967 S.W.2d 810, 813 (Tenn. App. 1997). The trial court's judgment having been reversed, there is no judgment. The entry of a judgment in Orlando's favor depends on a favorable outcome of the yet to be scheduled trial on NLC's statute of limitations defense. Orlando has at most the probablistic expectation of obtaining a favorable judgment eventually, and such an expectation is not a judgment and does not create a lien.

A reversed judgment, moreover, does not have res judicata (thus including collateral estoppel) effect under

Tennessee law, *Cook v. Great West Casualty Co.*, No. 13, 1991 WL 30185, at *1 (Tenn. Mar. 11, 1991); *McIntyre v. Traughber*, 884 S.W.2d 134, 138 (Tenn. App. 1994); *Merchants & Mfrs. Transfer Co. v. Johnson*, 403 S.W.2d 106, 107 (Tenn. App. 1966); *Restatement (First) of Judgments* § 41, Comment d (1942), and so cannot affect the district court's ruling in GP Credit's favor. And while the Tennessee trial court's judgment was entered before GP Credit bought rights to the Metric lawsuit along with NLC's other property at the foreclosure sale, any lien that such a judgment might have created would (in light of the subsequent reversal) have been a lien created by mistake, a premature lien (the expectation we referred to earlier), and nothing on which Orlando could found a claim to the property.

Nor did the writ of execution or the motion to subject NLC's property to payment of the later-reversed judgment create a lien. The appeals court in Tennessee reversed the judgment in Orlando's favor before the district court in the present case had determined whether GP Credit had a clear title to the Metric proceeds. With that reversal, Orlando lost any right it might have had to satisfy its judgment out of assets of NLC or NLC's successor, GP Credit. The writ of execution and the motion to subject presupposed a judgment, Tenn. Code Ann. §§ 25-5-103, 26-4-101(a), 102; *Keep Fresh Filters, Inc. v. Reguli*, 888 S.W.2d 437, 443 (Tenn. App. 1994), and the judgment had gone by the boards, as we have been repeating at tireless length. Even if Orlando gets a judgment tomorrow, it won't be able to attach a lien now to the chose in action (the suit against Metric) because the chose is no longer in NLC's hands; it has been bought by GP Credit at a public sale.

The last question we have to decide is whether, if we put to one side any lien possessed by Orlando, GP Credit really

did acquire title to the Metric chose in action when, having foreclosed against NLC, it bought all of NLC's property at the foreclosure sale. Orlando argues that GP Credit did not acquire a good title, and if this is right then presumably the chose belongs to NLC still and Orlando may be able to grab it if it finally wins its suit against NLC. Its principal argument is that the description of GP Credit's security interest—the interest that secured the loan to NLC on which GP Credit foreclosed—was too vague to satisfy the UCC. The description was "any and all personal property." We need not decide whether this language was really too vague. The purpose of the security agreement in a UCC-governed secured transaction, as distinct from the financing statement, is to define the rights of the parties to the security agreement, not to confer rights on third parties. *Milwaukee Mack Sales, Inc. v. First Wisconsin National Bank*, 287 N.W.2d 708, 713 (Wis. 1980). So only subsequent creditors who have actually read the security agreement and been misled by a vague description in it can challenge the sufficiency of the description. *National Bank of Fulton County v. Haupricht Bros., Inc.*, 564 N.E.2d 101, 114 (Ohio App. 1988) (per curiam). Even a vague description in the financing statement, a statement that *is* designed for the protection of third parties, creates rights only in persons misled by it, for example persons lending money to NLC without knowing that NLC had granted a security interest in its major asset. See UCC § 9-401(2) (rev. 1972); *Brown v. Yousif*, 517 N.W.2d 727, 729-30 and n. 10 (Mich. 1994); *Thompson v. Danner*, 507 N.W.2d 550, 560-61 (N.D. 1993); *First State Bank v. United Dollar Stores*, 571 P.2d 444, 447-48 (Okla. 1977); *United States v. Newcomb*, 682 F.2d 758, 762 (8th Cir. 1982). Orlando was not misled.

There are other issues, but none that deserves discussion. The judgment for GP Credit is

AFFIRMED.

A true Copy:

    Teste:


                            _____
                            *Clerk of the United States Court of*
                            *Appeals for the Seventh Circuit*