# In the
# United States Court of Appeals
## For the Seventh Circuit

Nos. 07-4050, 08-1044

ORLANDO RESIDENCE, LTD.,

*Plaintiff-Appellee/Cross-Appellant,*

*v.*

GP CREDIT CO., LLC, et al.,

*Defendants-Appellants, Cross-Appellees.*

No. 07-4051

SUSAN B. NELSON,

*Plaintiff-Appellant,*

*v.*

ORLANDO RESIDENCE, LTD., *et al.,*

*Defendants-Appellees.*

Appeals from the United States District Court
for the Eastern District of Wisconsin.
Nos. 04-C-439, 07-C-436—**Rudolph T. Randa**, *Chief Judge.*

ARGUED DECEMBER 10, 2008—DECIDED JANUARY 22, 2009

Before POSNER, KANNE, and ROVNER, *Circuit Judges*.

POSNER, *Circuit Judge*.  For 22 years these parties and their predecessors have been litigating, in numerous lawsuits in different courts, a dispute over a piece of property in Nashville. We were told at argument without contradiction that the parties have expended $3 million in legal fees, a figure that exceeds any reasonable estimate of the amount in controversy. Yet such behavior need not be irrational or a product of spite or even of bad legal advice. A rational litigant, having expended $X$ in unsuccessful efforts to prevail, yet having additional litigation options that he can pursue, will compare the cost of those options to the expected benefit, disregarding the $X$ he has spent already. That is a sunk cost—a cost he cannot recover by anything he does and therefore a cost that will not influence his behavior (if he is rational). Still, from an overall social standpoint, the money spent on this litigation—which we cannot quite end today, much as we would like to—is excessive. But our decision will bring the end within sight.

In the early 1980s a dispute arose between Samuel Hardige and Kenneth Nelson. The dispute was settled by Hardige's giving Nelson's company, Nashville Residence Corporation (NRC), a hotel property in Nashville in exchange for a promissory note of NRC secured by the property and payable in October 1986 to one of Hardige's companies, Orlando Residence, Ltd. NRC failed to pay the note when due and two months later Orlando sued NRC on the note in federal district

court in Tennessee, basing federal jurisdiction on diversity of citizenship. NRC responded by conveying the property to Nashville Lodging Company (NLC), another corporation controlled by Nelson, and NLC in turn transferred the property to Metric Partners Growth Suite Investors in 1989. The following year, the federal district court entered judgment against NRC for the face amount of the note, plus interest.

In 1992 Orlando brought suit in a Tennessee chancery court against NRC, NLC, Nelson, and Metric, claiming that the transfer of the property by NRC to NLC, and by NLC to Metric, was a fraudulent effort to prevent Orlando from collecting on the judgment that it had obtained in federal court. In 1995, after a trial, the chancery court entered judgment for Orlando of $501,934 in compensatory damages and $850,000 in punitive damages. The defendants appealed. One of the appellants' arguments was that Orlando did not have standing to sue. There were two entities named Orlando Residence, Ltd., one of which was owned 98 percent by Hardige and the other 100 percent, and the appellants claimed that the Orlando entity that owned the promissory note on which the suit was based was not the one that was the plaintiff-appellee in the litigation and therefore had no standing to sue. The Tennessee court of appeals rejected the argument on the ground that Tennessee law is not concerned with such trifles as distinguishing between two commonly owned, identically named entities. *Orlando Residence, Ltd. v. Nashville Lodging Co.*, 1996 WL 724915, at *2 (Tenn. App. Dec. 18, 1996). They were as Tweedledum and Tweedledee. But proceeding to the

merits the court found errors in the chancery court's decision and remanded for a new trial.

Shortly before the court of appeals' decision, Orlando had moved the chancery court to order the hotel property sold to satisfy Orlando's judgment, the court had ordered the sale, and at the sale Orlando had purchased the property for $100,000. When the court of appeals reversed the judgment in the fraudulent conveyance suit, the defendants asked the chancery court to set aside the sale; they also renewed their argument that Orlando lacked standing. The chancery court rejected both their arguments. So the defendants again appealed. The court of appeals, invoking the doctrine of law of the case, refused to consider the defendants' renewed argument that Orlando lacked standing and went on to affirm the chancery court's decision refusing to set aside the sale. *Orlando Residence, Ltd. v. Nashville Lodging Co.*, 1999 WL 1040544, at *4 (Tenn. App. Nov. 17, 1999).

The new trial that the court of appeals had ordered in the first appeal was held in 2000, and the jury returned a verdict in favor of Orlando for $797,615. The judge gave the defendants a credit of $100,000, the amount that Orlando had agreed to pay for the property (formerly NLC's) at the judicial sale. On appeal, the court of appeals held that the judicial sale had been proper and so the defendants were entitled to no more for their property interest than Orlando had agreed to pay at the sale. The court further ruled that NRC's conveyance of the property to NLC had indeed been fraudulent, but the court remanded the case to the chancery court for an

evidentiary hearing on the defendants' statute of limitations defense. *Orlando Residence, Ltd. v. Nashville Lodging Co.*, 104 S.W.3d 848 (Tenn. App. 2002).

Back in 1999 NLC had granted a security interest in its personal property to another entity controlled by Kenneth Nelson, GP Credit Co., in exchange for a loan. NLC's personal property included a lawsuit against Metric (to which, recall, NLC had conveyed the hotel property in 1989) in Tennessee. In 2001, GP Credit foreclosed its security interest in NLC's personal property and bought the property at the foreclosure sale, including the suit against Metric. Orlando persuaded the chancery court to appoint a receiver to hold any proceeds of the Metric suit that NLC might obtain, to pay Orlando's judgment against NLC. GP Credit responded by filing a diversity suit in a federal court in Wisconsin, GP Credit's domicile, to clear its title to the Metric suit. We upheld the district judge's judgment in favor of GP Credit, ruling that GP Credit owned the suit free and clear of any claim by Orlando. *GP Credit Co., LLC v. Orlando Residence, Ltd.*, 349 F.3d 976 (7th Cir. 2003).

In 2004, pursuant to the Tennessee court of appeals' remand, Orlando's fraudulent conveyance suit was again retried, and again Orlando won—and again the chancery court refused to reconsider the earlier rulings on Orlando's standing to sue. Because Kenneth Nelson refused to put in a personal appearance at the trial, the judge entered a default judgment in favor of Orlando, and the court of appeals affirmed. *Orlando Residence, Ltd. v. Nashville Lodging Co.*, 213 S.W.3d 855 (Tenn. App. 2006).

Orlando at last had solid final judgments against NRC, NLC, and Kenneth Nelson.

The challenge was to collect these judgments. To that end Orlando had brought the present suit, originally in the Tennessee chancery court, against NLC, GP Credit, Kenneth Nelson and his wife Susan, and Hayvenhurst Pension & Profit Sharing Plan, claiming that Kenneth Nelson and NLC had made fraudulent conveyances to the other defendants in an effort to prevent Orlando from collecting its judgment. GP Credit counterclaimed, claiming unjust enrichment (for which it sought restitution), intentional interference with a business relationship, and slander of title. (It later added an additional restitution claim.) The defendants removed the suit to federal district court on the basis of diversity of citizenship, and that court then transferred the case to a federal district court in Wisconsin. The district judge rejected both of Orlando's claims and GP Credit's counterclaims, and both sides have appealed. Susan Nelson filed a separate suit in the same district court to quiet title to her property so that it cannot be seized to pay the judgment against the defendants in Orlando's suit. The district judge dismissed that suit, and she appeals.

We begin with Orlando's appeal. Two years after we issued our decision in GP Credit's quiet-title suit against Orlando, Orlando obtained a default judgment from the chancery court in Tennessee against GP Credit. Orlando claimed that GP Credit was an alter ego of Kenneth Nelson and therefore liable on his debt to Orlando. GP Credit argues that the chancery court did not have juris-

diction to issue the default judgment because it was a judgment in rem—the res being the lawsuit against Metric, which had been the property of NLC. As we explained in our decision (see 349 F.3d at 981), the site of a res that consists of a lawsuit is the owner's domicile. Because GP Credit was the owner of the lawsuit, its domicile and therefore the site of the lawsuit were Wisconsin. The district judge in the present case thought that to allow Orlando to obtain the proceeds of the Metric lawsuit would be inconsistent with our decision holding that GP Credit owns the suit free and clear of any claims by Orlando.

The judge was wrong. The basis on which Orlando seeks to add GP Credit as a defendant is not that Orlando owns the Metric lawsuit but that GP Credit is the alter ego of Kenneth Nelson—which we didn't know when we issued our decision—so that property of GP Credit, including therefore the Metric lawsuit, is available for satisfaction of Orlando's judgment against Nelson. The default judgment established this, and, by suing GP Credit, Orlando is simply trying to collect its judgment against Nelson from Nelson's alter ego. That is entirely proper, and so its claim should not have been dismissed.

We turn to GP Credit's counterclaims. The first is that it is entitled to restitution of $3.3 million, its extravagant estimate of the value of NLC's property interest that was extinguished at the judicial sale of the property to Orlando for $100,000 lo these many years ago. Remember that GP Credit acquired NLC's personal property, which includes legal claims such as the claim to the value of the

property. But remember too that the Tennessee court of appeals held that the judicial sale was proper and that NLC (and hence GP Credit) was entitled to only $100,000, the proceeds of the sale. That ruling extinguished GP Credit's claim by operation of res judicata.

GP Credit contests this conclusion, arguing that the chancery court never acquired jurisdiction of Orlando's suit against NLC because the wrong Orlando Residence, Ltd. had sued, a mistake that under Tennessee law *may* have deprived the court of subject-matter jurisdiction—though we doubt it. *Osborn v. Marr*, 127 S.W.3d 737, 740 (Tenn. 2004), holds that standing to sue is a jurisdictional prerequisite, but a confusion between alter egos hardly rises to the level of an absence of standing. No matter; the question of standing had been litigated, and answered in Orlando's favor by the chancery court and the answer upheld by the Tennesee court of appeals, which in a subsequent appeal refused to permit the issue to be relitigated.

GP Credit argues that a decision by a court that lacks subject-matter jurisdiction can *always* be attacked collaterally, but that is not true either; and anyway, if Tennessee would not permit its judgment to be attacked collaterally, the federal court would be bound. 28 U.S.C. § 1738; *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373 (1985).

If a court of competent jurisdiction—a court authorized to decide the kind of case in which the jurisdictional question arises (which is true of the Tennessee chancery

court)—resolves a jurisdictional issue in a full and fair hearing, that resolution is entitled to the same collateral estoppel effect that a ruling on a substantive issue would be entitled to. E.g., *Underwriters National Assurance Co. v. North Carolina Life & Accident & Health Ins. Guaranty Ass'n*, 455 U.S. 691, 706-07 (1982); *Durfee v. Duke*, 375 U.S. 106, 111-15 (1963); *Stoll v. Gottlieb*, 305 U.S. 165, 171-72 (1938); *Tennessee ex rel. Sizemore v. Surety Bank*, 200 F.3d 373, 381 (5th Cir. 2000) (Tennessee law); *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 250 (9th Cir. 1992). Otherwise there would be nothing to prevent the incessant relitigation of the same jurisdictional challenges by the same parties (or parties in privity with them)—which is just what the defendants are attempting. (For another attempt, and another judicial rebuff, see *GP Credit Co., LLC v. Orlando Residence Ltd.*, No. 01-CV-2294, pp. 9-11 (S.D. Cal. Sept. 20, 2007).)

Many cases go further and hold that if a court of competent jurisdiction "decides a case on the merits after an adversarial presentation, the judgment cannot be collaterally attacked" even if the parties failed "to address jurisdiction fully or cogently." *United States v. County of Cook*, 167 F.3d 381, 388 (7th Cir. 1999). (But here they did.) "A party that has had *an opportunity* to litigate the question of subject-matter jurisdiction may not . . . reopen that question in a collateral attack upon an adverse judgment." *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702 n. 9 (1982) (emphasis added); see *Chicot County Drainage District v. Baxter State Bank*, 308 U.S. 371 (1940); *Bell v.*

*Eastman Kodak Co.*, 214 F.3d 798, 801 (7th Cir. 2000) ("to allow a ground that can be adequately presented in a direct appeal to be made the basis of a collateral attack would open the door to untimely appeals . . . . The losing party could reserve the ground until he had presented it unsuccessfully to the district court in the form of a Rule 60(b) motion. That is not permitted"); *Sterling v. United States*, 85 F.3d 1225, 1230-31 (7th Cir. 1996) (concurring opinion) ("this salutary approach exists because there is a need for finality in the law, and finality would be disserved if courts had to reexamine the jurisdictional basis of every prior judgment before giving it preclusive effect").

These cases (and the *Restatement (Second) of Judgments* § 12 and comment a (1982)) relax the normal rule of collateral estoppel—that the issue in question, the issue a party wants to prevent being reopened, have been "actually litigated." *Id*., § 27. They do this because an attempt to invalidate a judgment is far more problematic than an attempt merely to relitigate an issue that might have been but was not litigated in a previous case the judgment in which remains in force.

Against a veritable mountain of authority, GP Credit cites *Dunham v. Stitzberg*, 201 P.2d 1000 (N.M. 1948), which refused to give preclusive effect to a 20-year-old decision by a probate court that had exceeded its jurisdiction by determining title to real estate. But that was an example of a decision by a court that, unlike the Tennessee chancery court, was not a court competent to make such a determination. The opinion explained that "it

is a matter of common knowledge that [in New Mexico] probate proceedings are usually ex parte; that probate judges in this state are, with few exceptions, not lawyers, and many are ignorant and not fitted for the office. Often they sign prepared orders and decrees without reading; or if read, then without understanding the import. If in fact these courts had the jurisdiction asserted, it would be exercised in most cases without any real trial to determine the fact of heirship." *Id*. at 1014. (GP Credit neglected to mention that *Dunham* has been overruled, *In re Conley's Will*, 276 P.2d 906, 909 (N.M. 1954). The ground was that the probate court did have the jurisdiction that *Dunham* held it did not have.)

It is true, as we noted earlier, citing section 1738 of the Judicial Code and the *Marrese* decision, that a state is free to decide how much or how little respect its judgments should be given in subsequent cases, and other states and the federal courts are bound to give those judgments the same effect in their cases. The defendants insist that the Tennessee courts place no limits at all on the relitigation of issues of subject-matter jurisdiction, but no cases support that insistence. *Tennessee Dept. of Human Services v. Gouvitsa*, 735 S.W.2d 452, 457 (Tenn. App. 1987), did deny preclusive effect to the decision of a court that lacked subject-matter jurisdiction, but the opinion is silent on whether the issue of jurisdiction had been or could have been litigated in the earlier case. And the opinion relied on an old decision by the Supreme Court of Tennessee, *Brown v. Brown*, 281 S.W.2d 492 (Tenn. 1955), which might well not be followed today, as it reflects the old rather than the modern view of the appropriate

scope of collateral attacks on judgments. See *Restatement*, *supra*, § 12, comment a. No matter; if the Supreme Court of Tennessee would even today reject the *Restatement* rule, there is no indication that it would go further and allow the issue to be litigated over and over and over again, as the defendants have tried to do. *Tennessee ex rel. Sizemore v. Surety Bank, supra*, 200 F.3d at 381, is to the contrary; and in *Goeke v. Woods*, 777 S.W.2d 347, 350 (Tenn. 1989), the Supreme Court of Tennessee endorsed, albeit in dictum, the application of collateral estoppel to questions of jurisdiction: "*Res judicata* applies to questions of jurisdiction, if jurisdiction is litigated or determined by the court. The preclusive effect of a dismissal for lack of jurisdiction is, however, limited to the matters actually decided, and is not binding as to all matters which could have been raised" (citation omitted).

GP Credit's next counterclaim, which charges Orlando with tortious interference with an advantageous business relationship, grows out of our previous decision. After we confirmed GP Credit's title to the lawsuit against Metric free of Orlando's claims, Metric offered to settle the suit for $650,000 if Orlando would dissolve the receivership that the chancery court in Tennessee had created to hold the proceeds of the suit, in which Orlando asserted an interest. Orlando refused, the suit was settled for only $150,000, and GP Credit seeks the difference from Orlando. The claim is frivolous, even if one assumes (and why not?) that a settlement between commercial enterprises could be deemed a business relationship for purposes of the tort. It is hardly tortious conduct merely to refuse to incur the expense of dissolving a receivership; the

benefit of dissolution would have been entirely to GP Credit, so it should have sought the dissolution. There is no evidence that Orlando even knew about Metric's settlement offer to GP Credit and the condition attached to it. And it would not have been in Orlando's interest to block the settlement. It has a judgment that GP Credit is an alter ego of Kenneth Nelson, against whom it has a money judgment; the more GP Credit obtained from Metric in a settlement, the larger the potential pool of assets out of which Orlando could satisfy its judgment against GP Credit. Anyway Orlando had a valid interest in the maintenance of the receivership. We had ordered it dissolved because Orlando had no interest in the Metric suit. But we were not aware that GP Credit was an alter ego of Nelson—which Orlando gave a legitimate interest in any settlement that Metric made with GP Credit.

GP Credit's slander of title counterclaim fails for the same reason: Orlando had a valid reason to question GP Credit's right to keep the proceeds of a settlement with Metric.

GP Credit's last counterclaim seeks restitution of a $150,000 bond that NLC had been required to post in the Metric lawsuit. NLC deposited the money in the Tennesee chancery court, and the court gave the money to Orlando after the default judgment that determined that GP Credit is an alter ego of Kenneth Nelson. GP Credit contends that the bond belongs to it by virtue of our decision upholding its quiet-title action, and that the chancery court did not have jurisdiction to issue the default judgment because it was a judgment in rem (the

bond being the res) and the site of a res that consists of a lawsuit is, as we know, the owner's domicile. GP Credit was the owner of the lawsuit, and hence of the bond that it posted in the suit, and its domicile is Wisconsin. But this reasoning overlooks the fact that the *bond* had been deposited in the Tennessee court; the res was thus in Tennessee, not Wisconsin. As we explained, the basis on which Orlando was given the bond money was not that Orlando owned the Metric lawsuit but that GP Credit is the alter ego of Kenneth Nelson, so that *any* property of GP Credit is fair game for satisfying Orlando's judgment against Nelson.

We turn last to Susan Nelson's suit. As part of its efforts to collect its judgment, Orlando brought a suit in a Wisconsin state court to establish that property that Mrs. Nelson claims to be her own is actually property owned jointly with her husband and thus is available to pay a judgment against him. Wis. Stat. § 803.045(3); *Courtyard Condominium Ass'n, Inc. v. Draper*, 629 N.W.2d 38, 42 (Wis. App. 2001). That suit is pending. After it was filed, Mrs. Nelson brought her present suit to quiet title to her property—that is, to establish that it really is her property rather than being jointly owned with her husband. The district judge dismissed the suit because when two in rem suits involving the same res are pending in different courts the court in which the second suit was filed must dismiss its suit. *Penn General Casualty Co. v. Commonwealth of Pennsylvania ex rel. Schnader*, 294 U.S. 189, 195-96 (1935); *Kline v. Burke Construction Co.*, 260 U.S. 226, 229 (1922); *United States v. $506,231 in U.S. Currency*, 125 F.3d 442, 447-48 (7th

Cir. 1997). We are given no reason to depart from that sensible rule.

To summarize, the judgment of the district court is reversed insofar as it rejected Orlando's alter ego claim against GP Credit but in all other respects is affirmed.

The time has come to put an end to the defendants' stubborn efforts to prevent Orlando from obtaining the relief to which it is entitled. The district judge should give consideration to enjoining the defendants from further maneuvers to evade the judgments that Orlando has obtained against them. The authority for issuing such an injunction (a "bill of peace," as it is called) is well established. See, e.g., *Allendale Mutual Ins. Co. v. Bull Data Systems, Inc.*, 10 F.3d 425, 431 (7th Cir. 1993); *Newby v. Enron Corp.*, 542 F.3d 463, 472-73 (5th Cir. 2008); *Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986); *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1056-59 (9th Cir. 2007) (per curiam).

AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED WITH DIRECTIONS.