IN THE SUPREME COURT OF NORTH CAROLINA

No. 113A19

Filed 14 August 2020

ORLANDO RESIDENCE, LTD.

v.

ALLIANCE HOSPITALITY MANAGEMENT, LLC, ROLF A. TWEETEN, AXIS HOSPITALITY, INC., and KENNETH E. NELSON

Appeal pursuant to N.C.G.S. § 7A-27(a)(2) from an order entered on 20 December 2018 by Judge James L. Gale, Senior Business Court Judge, in Superior Court, Wake County, after the case was designated a mandatory complex business case by the Chief Justice pursuant to N.C.G.S. § 7A-45.4(b). Heard in the Supreme Court on 11 December 2019.

*No brief for plaintiff Orlando Residence, Ltd.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P., by J. Gray Wilson and Jackson W. Moore Jr., for defendant-appellees Alliance Hospitality Management, LLC, Rolf A. Tweeten, and Axis Hospitality, Inc.*

*Kenneth Nelson, defendant-appellant, pro se.*

DAVIS, Justice.

In this case, we address several issues relating to the ability of a defendant to assert crossclaims against a co-defendant pursuant to the North Carolina Rules of Civil Procedure. Based on our conclusion that the dismissal of the defendant's crossclaims here was proper, albeit on different grounds than those relied upon by the Business Court, we modify and affirm the decision of the Business Court.

**Factual and Procedural Background**

This appeal arises from the latest lawsuit in protracted litigation between Kenneth Nelson; Alliance Hospitality Management, LLC (Alliance); and Orlando Residence, Ltd. (Orlando). Alliance is a Georgia company that provides hotel management services with its principal place of business in North Carolina. Nelson is a former employee of Alliance who possesses an ownership interest in the company. Axis Hospitality, Inc. (Axis) is an Illinois corporation that is the majority owner of Alliance. Axis is wholly owned and managed by an individual named Rolf Tweeten. Orlando is a judgment creditor of Nelson.[1]

In order to fully analyze the issues before us in this appeal, it is necessary to review in some detail the extensive factual and procedural history between the parties.

## I.    Nelson's Ownership Interest in Alliance

In 2007, Axis purchased a 51% interest in Alliance. Around this same time, Tweeten hired Nelson as a consultant to help him acquire the remainder of Alliance. In 2008, Tweeten reached an oral agreement with Nelson that granted him a limited ownership interest in Alliance. Nelson was also made a director of Alliance and later became Chief Financial Officer of the company. He served in that role until 31 January 2011.

---

[1] Despite the fact that it originally instituted this action, Orlando has not participated in this appeal, which solely involves the dismissal of crossclaims asserted by Nelson against his co-defendants.

On 25 February 2011, Nelson filed a lawsuit (the Nelson Action) in Superior Court, Wake County, against Alliance, Axis, and Tweeten (collectively, the Alliance Defendants) in which he asserted claims for (1) breach of fiduciary duty; (2) constructive fraud; (3) judicial dissolution of Alliance; (4) a declaratory judgment regarding the extent of Nelson's ownership in Alliance's "membership interest units"; and (5) wrongful termination.[2] All of Nelson's claims were dismissed prior to trial with the exception of the fourth claim seeking a declaratory judgment with regard to Nelson's ownership interest in Alliance. Nelson's declaratory judgment claim asserted that he owned 10 of the existing 61 membership units in Alliance, thereby giving him a 16.4% ownership interest. The Alliance Defendants, conversely, contended that Nelson had been granted only a 10% interest.

A trial was held on the declaratory judgment claim beginning on 16 March 2015, and at the close of the evidence, the jury was tasked with answering—along with an additional question not relevant to this appeal—the following question: "Did Alliance's board of directors issue 10 membership units to Kenneth E. Nelson?" The jury answered in the affirmative. The jury was not asked, however, to determine the total number of membership units existing in Alliance, thereby leaving unanswered the precise percentage of Nelson's ownership interest in Alliance. On 27 March 2015, the Business Court entered an order declaring Nelson to be "the holder of 10

---

[2] The matter was designated a complex business case by the Chief Justice on 1 June 2011 and transferred to the North Carolina Business Court.

membership units in Alliance . . . ." The Business Court further ordered that Alliance's Board of Directors "adopt a resolution, or otherwise amend the corporate records, to reflect that Kenneth E. Nelson owns 10 membership units." Nelson appealed the Business Court's pre-trial dismissal of his damages claims, and the Court of Appeals affirmed the Business Court's ruling. *See Nelson v. Alliance Hosp. Mgmt., LLC,* 2016 N.C. App. LEXIS 412 (N.C. Ct. App. 2016) (unpublished).

## II. Orlando's Enforcement of Foreign Judgments Against Nelson in North Carolina

As a result of a failed business venture dating back to the late 1980s, Orlando secured two money judgments against Nelson[3] during the years preceding the filing of the present lawsuit. The first judgment was issued by the Chancery Court for Davidson County, Tennessee on 7 October 2004 in the amount of $797,615. In an effort to enforce this judgment against Nelson in North Carolina, Orlando filed a motion for a "charging order" in Superior Court, Wake County. On 12 May 2011, the superior court issued such an order, finding that Orlando's judgment had not been completely satisfied and stating, in part, that "any distribution, allocations, or payments in any form otherwise due from Alliance . . . to Kenneth E. Nelson up to $121,127.85 . . . shall instead be paid to Orlando Residence, Ltd."

---

[3] The first of these judgments was actually entered against Nashville Lodging Company, a corporation controlled by Nelson that he was found to have used to facilitate fraudulent conveyances and avoid Orlando's collection efforts. *See Orlando Residence, Ltd. v. GP Credit Co., LLC,* 553 F.3d 550, 553 (7th Cir. 2009).

The second judgment was entered by a federal court in the District of South Carolina on 15 August 2012 in the amount of $4,000,000. Seeking to enforce this judgment against Nelson in North Carolina, on 11 September 2012 Orlando filed the judgment in Superior Court, Wake County, and once again sought a charging order. On 14 February 2013, the superior court issued a charging order providing that "any distributions, allocations, or payments in any form otherwise due from Alliance Hospitality Management, LLC, to Kenneth E. Nelson up to $4,000,000 plus post judgment interest, shall not be paid to Nelson, but shall instead be paid to Orlando Residence, Ltd. . . . "

On 3 September 2015, Orlando filed—under the same case number utilized in the second charging order proceeding—a motion for civil contempt against Alliance in Superior Court, Wake County, for its alleged failure to make distribution payments in the appropriate amounts as required pursuant to the charging orders. In this motion, Orlando asserted that between 12 May 2011—the date of the first charging order—and 1 September 2015, Alliance had paid Orlando only $716,708.61 of the $7,167,086 in total distributions that Alliance had disbursed to its owners during that time frame. Orlando contended that Alliance's calculation of the amounts of Nelson's distributions was based on Alliance's erroneous position that Nelson held only a 10% membership interest in Alliance. Orlando maintained that, in actuality, Alliance had a total of 61 membership units—10 of which were owned by Nelson—and that, as a result, Orlando was entitled to receive 16.4% of past and future Alliance distributions

pursuant to the charging orders.

A hearing was held on the motion for contempt on 9 November 2015. The superior court issued an order denying Orlando's motion on 24 November 2015, ruling that "there has been no judicial determination . . . that there were 61 total membership units in Alliance or that Nelson owned 16.4% of Alliance . . . . The only judicial determination that has been made is the jury's verdict that Nelson holds 10 membership units in Alliance." The superior court concluded that "Alliance acted appropriately to distribute the $716,708.62[4] to [Orlando] that corresponded to a 10% ownership interest by Nelson" and that "Alliance has not failed to comply with a court order . . . ."

### III. The Present Action

On 15 March 2017, Orlando filed the present lawsuit in Superior Court, Wake County, against the Alliance Defendants and Nelson[5] seeking "recovery of funds Alliance wrongfully transferred to Tweeten and/or Axis in violation of two charging orders previously entered." The complaint alleged that the charging orders required distributions to be calculated on the basis of Nelson holding a 16.4% membership interest in Alliance rather than merely a 10% interest. In its complaint, Orlando asserted claims for (1) civil contempt; (2) violation of the Uniform Fraudulent

---

[4] Orlando's motion asserted that it had been paid $716,708.6*1*, but the trial court's order stated that the amount that had been paid as of that date was $716,708.6*2*.

[5] Orlando's complaint did not assert any claims directly against Nelson and instead designated him as a "nominal defendant . . . solely for purposes of North Carolina Rule of Civil Procedure 19(a) as a person who may be united in interest with [Orlando]."

Transfers Act; (3) constructive trust; (4) conversion; (5) accounting; and (6) a declaratory judgment that "there are 61 units outstanding in Alliance, that Nelson owns 16.4% of Alliance, and that Alliance was and in the future is required to pay 16.4% of all distributions to [Orlando] until such time as [Orlando's] judgments against Nelson are satisfied." The case was designated a mandatory complex business case and transferred to the Business Court on 16 March 2017.

On 3 May 2017, the Alliance Defendants filed a motion to dismiss the claims contained in Orlando's complaint based on lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the North Carolina Rules of Civil Procedure and failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). In this motion, the Alliance Defendants argued that Orlando's claims should be dismissed on the grounds that (1) Orlando lacked standing to pursue claims concerning the internal corporate governance of Alliance; (2) certain claims asserted by Orlando were barred by the doctrines of res judicata and collateral estoppel; and (3) the statute of limitations also served to bar a number of Orlando's claims.

Prior to the filing of a responsive pleading by the Alliance Defendants, on 4 April 2017, Nelson, appearing pro se, filed a document entitled "Answer, Defenses, and Crossclaims of Kenneth E. Nelson," in which he asserted eighteen crossclaims against the Alliance Defendants seeking damages and various forms of equitable relief. Specifically, Nelson asserted claims for (1) conversion against Tweeten, Alliance, and Axis; (2) wrongful taking against Tweeten, Alliance, and Axis; (3)

common law conspiracy against Tweeten; (4) statutory conspiracy under Wis. Stat. § 134.01 against Tweeten; (5) conspiracy to slander title against Tweeten; (6) aiding and abetting slander of title against Tweeten; (7) breach of fiduciary duty against Tweeten; (8) constructive fraud against Tweeten and Axis; (9) a constructive trust against Tweeten and Axis; (10) an equitable accounting against Tweeten, Alliance, and Axis; (11) unjust enrichment against Tweeten, Alliance, and Axis; (12) *quantum meruit* against Tweeten, Alliance, and Axis; (13) breach of contract and breach of the duty of good faith and fair dealing against Tweeten; (14) breach of contract and breach of the duty of good faith and fair dealing against Axis; (15) a derivative action for constructive fraud against Tweeten and Axis; (16) a derivative action for breach of fiduciary duty against Tweeten; (17) alternatively, a direct action for breach of fiduciary duty against Tweeten; and (18) alternatively, a direct action for constructive fraud against Tweeten and Axis. In addition, Nelson filed a motion requesting that he not be identified and treated as merely a "nominal defendant."

On 30 May 2017, the Alliance Defendants moved to dismiss Nelson's crossclaims pursuant to Rules 12(b)(1) and (6). In their motion, they contended, in part, that with the exception of his first, second, and ninth crossclaims, Nelson's crossclaims were not related to the subject matter of Orlando's complaint and were therefore procedurally improper. The Alliance Defendants also asserted that Nelson's crossclaims were barred by res judicata, collateral estoppel, and the statute of limitations.

The Business Court entered an order on 20 December 2018 addressing the pending motions. First, the court granted the Alliance Defendants' motion to dismiss the claims asserted by Orlando. The court ruled that Orlando's claims constituted an impermissible collateral attack on the 24 November 2015 order issued by the Superior Court, Wake County, determining that Alliance had complied with the charging orders in making its distributions to Orlando.

Second, the Business Court dismissed with prejudice all of Nelson's crossclaims. Initially, the Business Court expressed its belief that fifteen of Nelson's crossclaims "bear no relation to Orlando's claims and so are not properly brought as crossclaims pursuant to Rule 13(g)" of the North Carolina Rules of Civil Procedure. The Business Court ultimately ruled that *all* of Nelson's crossclaims were subject to dismissal, stating the following:

> The Court first notes that, in light of the dismissal of Orlando's claims, none of Nelson's crossclaims are properly before this Court. A related underlying transaction or occurrence is a prerequisite to the bringing of crossclaims. *See* N.C. Gen. Stat. § 1A-1, Rule 13(g).
>
> . . . .
>
> The Court notes that Nelson unsuccessfully sought to interject many of these claims or the facts regarding them into the Nelson Action. However, the Court need not wade into the waters of claim preclusion or estoppel to conclude that Nelson's claims are in any event not proper in this action. *Rather, those claims are not proper because the right to assert them depends on Orlando's Complaint surviving, which it has not.*

-9-

(Emphasis added).[6] On 17 January 2019, Nelson gave notice of appeal to this Court pursuant to N.C.G.S. § 7A-27(a)(2) seeking review of the Business Court's dismissal of his crossclaims against the Alliance Defendants.

## Analysis

The sole issue in this appeal is whether the Business Court properly dismissed Nelson's eighteen crossclaims. For the reasons set out below, we hold that the dismissal of Nelson's crossclaims was appropriate but based on different grounds than those relied upon by the Business Court.

"This Court reviews de novo legal conclusions of a trial court, including orders granting or denying a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6)." *Sykes v. Health Network Sols., Inc.*, 372 N.C. 326, 332, 828 S.E.2d 467, 471 (2019). In his appeal, Nelson argues that the Business Court incorrectly ruled that a crossclaim asserted by one defendant against a co-defendant automatically ceases to be viable once the plaintiff's original claims against the defendants are dismissed. We agree.

Rule 13(g) of the North Carolina Rules of Civil Procedure sets out the requirements for the filing of crossclaims and states as follows:

> Crossclaim against coparty. — A pleading may state as a crossclaim any claim by one party against a coparty arising out of the transaction or occurrence that is the subject matter either of the original action or of a counterclaim therein or relating to any property that is the subject matter of the original action.

---

[6] The Business Court also denied Orlando's motion seeking leave to amend its complaint.

> Such crossclaim may include a claim that the party against whom it is asserted is or may be liable to the crossclaimant for all or part of a claim asserted in the action against the crossclaimant.

N.C.G.S. § 1A-1, Rule 13(g) (2019).

In its order dismissing Nelson's crossclaims, the Business Court—as quoted above—determined that the crossclaims "are not proper because the right to assert them depends on Orlando's Complaint surviving, which it has not." This Court has not previously had occasion to consider whether a defendant's crossclaims against a co-defendant are no longer viable once the plaintiff's original claims against the defendants have been dismissed. However, the Court of Appeals addressed this precise issue 35 years ago in *Jennette Fruit & Produce Co. v. Seafare Corp.*, 75 N.C. App. 478, 331 S.E.2d 305 (1985).

In *Jennette*, the plaintiff sued multiple defendants, including Seafare Corporation (Seafare), two individuals (the Staffords), and Trenor Corporation (Trenor). The plaintiff sought monetary damages from Seafare and further sought to set aside a conveyance of real property from Seafare to the Staffords based on the plaintiff's assertion that the conveyance was made without consideration and with the intent to defraud the plaintiff. Thereafter, the Staffords had conveyed the property to Trenor. Seafare filed crossclaims against the Staffords and Trenor. *Id.* at 479, 331 S.E.2d at 306.

Following the filing of Seafare's crossclaims, the plaintiff voluntarily dismissed its claims against all defendants. The trial court subsequently dismissed Seafare's

crossclaims without prejudice based on its determination "that the dismissal of the plaintiff's claims against the crossclaiming defendants requires the dismissal of said crossclaims." *Id.* at 479–480, 331 S.E.2d at 306. Seafare appealed to the Court of Appeals, which held that Seafare could continue to litigate its crossclaims despite the plaintiff's dismissal of the original action. In reaching this conclusion, the Court of Appeals held as follows:

> We perceive no valid or compelling reason to dismiss a crossclaim over which the courts of this state have jurisdiction merely because the plaintiff's original claim against the crossclaiming defendant has been dismissed. To hold otherwise would needlessly force a defendant who has filed a proper crossclaim concerning a matter governed by state law to refile its claim as a new action. This would require additional time and expense, including court costs and counsel fees. Further, absent adoption of "relation-back" principles which could unnecessarily complicate the litigation, it could result in the time-barring of claims once timely filed. Such a holding would elevate form over substance. It would also be inconsistent with the purpose of Rule 13(g) to enlarge the scope of permissible crossclaims, which pre-Rules law permitted only for indemnification in a tort action.
>
> The aim of procedural rules is facilitation, not frustration, of decisions on the merits. The canon of interpretation of the Rules is one of liberality, and the general policy of the Rules is to disregard technicalities and form and determine the rights of litigants on the merits. To allow litigation of properly filed crossclaims to proceed regardless of whether a plaintiff's original claim remains extant will facilitate resolution of the crossclaims on their merits, while to disallow such is to regard technicalities and form without serving a substantive purpose. We thus hold that, unless a crossclaim is dependent upon plaintiff's original claim (as would be, e.g., a crossclaim for indemnity or contribution) or is purely defensive, a plaintiff's dismissal of its claims against all defendants does not require dismissal of crossclaims properly filed in the same action.

*Id.* at 483, 331 S.E.2d at 307–308 (cleaned up) (citations omitted).

We agree with the Court of Appeals' analysis in *Jennette*. Nothing in the plain language of Rule 13(g) expressly states, or otherwise suggests, that a plaintiff's original claims must continue to exist in order for a crossclaimant to obtain an adjudication of the crossclaims that it has properly asserted. The crossclaim is a procedural mechanism crafted "to avoid multiple suits and to encourage the determination of the entire controversy among the parties before the court with a minimum of procedural steps." *Selective Ins. Co. v. NCNB Nat'l Bank*, 324 N.C. 560, 565, 380 S.E.2d 521, 525 (1989) (quoting C. Wright & A. Miller, *Federal Practice and Procedure* § 1431 at 161 (1971)). To require the automatic dismissal of a defendant's crossclaims upon the dismissal of the plaintiff's original action would run counter to the objective of efficiently resolving all of the parties' related claims while they are present before the court. Accordingly, we hold that—with the exception of crossclaims such as claims for indemnity or contribution that necessarily require the continued litigation of the plaintiff's original claims in order to remain viable—the dismissal of the original action does not, by itself, mandate the dismissal of a crossclaim so long as the crossclaim meets the Rule 13(g) prerequisites for bringing such a claim.

In light of our ruling on this issue, it is clear that the Business Court erred in concluding that Nelson's crossclaims were automatically subject to dismissal simply because Orlando's claims were being dismissed. The Alliance Defendants assert, however, that the Business Court reached the correct result in dismissing Nelson's crossclaims even if its basis for doing so was incorrect. In so contending, they rely on

the principle previously recognized by this Court that "[w]here a trial court has reached the correct result, the judgment will not be disturbed on appeal even where a different reason is assigned to the decision." *Eways v. Governor's Island*, 326 N.C. 552, 554, 391 S.E.2d 182, 183 (1990); *see also Shore v. Brown*, 324 N.C. 427, 428, 378 S.E.2d 778, 779 (1989) ("If the correct result has been reached, the judgment will not be disturbed even though the trial court may not have assigned the correct reason for the judgment entered."). Thus, we must determine whether—as the Alliance Defendants contend—some other valid basis exists for the Business Court's dismissal of Nelson's crossclaims.

In making this determination, we begin by examining whether Nelson's crossclaims met the requirements of Rule 13(g). In so doing, we must first identify the "transaction or occurrence that is the subject matter . . . of the original action" and "any property that is the subject matter of the original action." N.C.G.S. § 1A-1, Rule 13(g). Here, the "original action" was Orlando's lawsuit against the Alliance Defendants. This lawsuit was exclusively concerned with the issue of whether Alliance had underpaid Orlando by making distributions under the charging orders premised on Nelson holding a 10%—rather than a 16.4%— interest in Alliance.

Next, we must determine whether Nelson's crossclaims are sufficiently related to Orlando's original action. The Business Court concluded that fifteen of Nelson's crossclaims "bear no relation to Orlando's claims . . . ." We agree with the Business Court that only three of Nelson's crossclaims relate directly to the claims asserted by

Orlando in its complaint. Nelson's first crossclaim asserts that the Alliance Defendants converted 6.4% of his interest in Alliance by failing to issue distributions to him of 16.4% of the total amount of money disbursed to Alliance's owners. Similarly, crossclaim 2 alleges that the Alliance Defendants have engaged in a wrongful taking of Nelson's additional 6.4% interest in Alliance. Finally, crossclaim 9 seeks the imposition of a constructive trust as to 6.4% of the total membership interests in Alliance and 6.4% of all Alliance distributions made since 1 January 2011.

The Alliance Defendants assert that (1) crossclaims 1, 2, and 9 are all subject to dismissal based on the doctrine of res judicata; and (2) because these were the only three of Nelson's eighteen crossclaims that met the requirements of Rule 13(g), the remaining fifteen crossclaims must likewise be dismissed. We address these arguments *seriatim*.

Res judicata "provides that a prior adjudication on the merits in a prior suit bars a subsequent, identical cause of action between the same parties or their privies," *State ex rel. Lewis v. Lewis*, 311 N.C. 727, 730, 319 S.E.2d 145, 147–48 (1984), and also prevents relitigation of claims that "in the exercise of reasonable diligence, could have been presented for determination in the prior action." *Smoky Mountain Enters. v. Rose*, 283 N.C. 373, 378, 196 S.E.2d 189, 192 (1973). This doctrine was "developed by the courts for the dual purposes of protecting litigants from the burden of relitigating previously decided matters and promoting judicial economy by preventing needless litigation." *Bockweg v. Anderson*, 333 N.C. 486, 491, 428 S.E.2d

157, 161 (1993). "The essential elements of *res judicata* are: (1) a final judgment on the merits in an earlier suit, (2) an identity of the cause of action in both the earlier and the later suit, and (3) an identity of parties or their privies in the two suits." *State ex rel. Utils. Comm'n. v. Thornburg,* 325 N.C. 463, 468, 385 S.E.2d 451, 453–54 (1989) (quoting *State ex rel. Utils. Comm'n. v. Public Staff,* 322 N.C. 689, 692, 370 S.E.2d 567, 569 (1988)).

The Alliance Defendants' invocation of res judicata principles here is based upon the Nelson Action. In the Nelson Action, Nelson sued the Alliance Defendants and sought, among other things, a declaratory judgment defining Nelson's ownership interest in Alliance. The jury determined that Alliance "issue[d] 10 membership units to Kenneth E. Nelson," and the trial court entered a judgment declaring Nelson to be an owner of 10 membership units in Alliance.

The first and third elements of res judicata are clearly satisfied. It is undisputed that a final judgment was rendered in the Nelson Action. Moreover, Nelson and the Alliance Defendants were all parties to the action. Nelson argues, however, that the second element of res judicata—an identity of the causes of action in both cases—has not been met because there was no ruling in the Nelson Action as to the total number of membership units in Alliance or as to the specific percentage of Nelson's ownership interest in Alliance. We disagree.

As discussed above, crossclaims 1, 2, and 9 seek relief on the theory that Nelson actually owns 16.4% of Alliance and was therefore entitled to distributions from

Alliance reflecting this percentage. The record makes clear that the extent of Nelson's ownership in Alliance was a relevant issue in the Nelson Action based on the parties' contentions in that lawsuit. In his claim for declaratory relief, Nelson expressly sought a judgment that he owned 10 of Alliance's 61 membership units. For reasons that are not clear from the record, however, the jury was not asked to decide the question of what specific percentage ownership interest Nelson held in Alliance or how many total membership units existed.

The record reflects that after the jury rendered its verdict, Nelson's counsel requested that the court's final judgment include a statement that "Axis Hospitality, Inc. owns [the remaining] 51 membership units" in Alliance. The Alliance Defendants responded by noting that it was Nelson's counsel who had drafted the jury issues and that "the jury was [not] asked to, and made no finding concerning, the number of units owned by Axis." The Alliance Defendants argued that the judgment "should reflect the jury's verdict but should not include matters not decided by the jury" and should not "expand on the jury's verdict in the Final Judgment." Ultimately, the Business Court entered a final judgment simply declaring that "Nelson is the holder of 10 membership units in Alliance" without making any reference to the total number of membership units in Alliance or Nelson's percentage ownership interest in the company.

Thus, crossclaims 1, 2, and 9—all of which necessarily require a determination of the total number of membership units in Alliance in order to calculate Nelson's

percentage ownership interest—present issues that *could* have been adjudicated in the Nelson Action but were not. As the party seeking the declaratory judgment in the Nelson Action, it was Nelson's obligation to obtain a ruling on those issues, but he failed to do so. Nor does the record reflect that in his appeal in the Nelson Action he made any argument that the Business Court had erred in failing to instruct the jury on those questions or that the court had otherwise committed error by not ruling on those issues itself. Accordingly, we conclude that the second element of res judicata is also satisfied and that crossclaims 1, 2, and 9 were therefore properly dismissed.[7]

Having determined that res judicata bars crossclaims 1, 2, and 9—the only crossclaims asserted by Nelson that met the criteria of Rule 13(g)—we must next determine the effect of that ruling on Nelson's remaining 15 crossclaims. Rule 18(a) of the North Carolina Rules of Civil Procedure states that "[a] party asserting a claim for relief as an original claim, counterclaim, *cross claim*, or third-party claim, may

---

[7] Although Nelson has not raised this issue, we take this opportunity to note that as a general matter a declaratory judgment action's preclusive effect is limited to issues "actually litigated by the parties and determined by a declaratory judgment" and therefore exists only in the context of *issue* preclusion (collateral estoppel) as opposed to *claim* preclusion (res judicata). 18A Wright & Miller, *Federal Practice and Procedure* § 4446 (2d ed. 2002). However, as our Court of Appeals has correctly noted, "[f]ederal courts . . . have consistently held that the general rule limiting the preclusive effect of declaratory judgments to issue preclusion 'applies only if the prior action *solely* sought declaratory relief.' " *Barrow v. D.A.N. Venture Props. of N.C., LLC*, 232 N.C. App. 528, 532, 755 S.E.2d 641 (2014) (emphasis added) (quoting *Laurel Sand and Gravel, Inc. v. Wilson*, 519 F.3d 156, 164 (4th Cir. 2008)). We see no reason why these basic principles should be applied differently in the courts of our state. It is clear that Nelson asserted additional claims seeking different types of relief in the Nelson Action along with his claim for a declaratory judgment. Thus, we are satisfied that the application of the doctrine of claim preclusion to the Nelson Action is appropriate.

join, either as independent or as alternate claims, as many claims, legal or equitable, as he has against an opposing party." N.C.G.S. § 1A-1, Rule 18(a) (emphasis added). Nelson contends that because one or more of his crossclaims did, in fact, relate to the subject matter of Orlando's original claims, thereby satisfying Rule 13(g), he was permitted to join all of his other crossclaims as additional claims under Rule 18(a). As a result, he asserts, the remaining fifteen claims should be allowed to go forward even if crossclaims 1, 2, and 9 are dismissed on res judicata grounds.

As quoted above, Rule 18(a)—as a general proposition—allows a party that has properly asserted a claim for relief against another party to join as many additional claims as it has against that other party. We believe, however, that implicit in Rule 18(a) is the notion that in order for a crossclaimant to be permitted to maintain such additional joined claims against a co-defendant as provided for under that Rule, the predicate crossclaim asserted by the crossclaimant in accordance with Rule 13(g) must survive the pleading stage. A leading treatise has noted that pursuant to Rule 18(a) of the Federal Rules of Civil Procedure—the federal rule on joinder—in order to take advantage of the more expansive joinder rules available in federal courts "a party must assert what may be called a 'qualifying claim,' " and "[u]ntil the party does so, the party is not a claimant, and may not invoke the claim joinder provision of Rule 18." 4 Moore's Federal Practice § 18.02[2][a]. (3d ed. 2014).[8] As such, "it

---

[8] Federal Rule of Civil Procedure 18(a) is essentially identical to N.C. R. Civ. P. 18(a). We have frequently recognized that although this Court is not bound by the decisions of

follows that if the qualifying claim asserted by a defendant is dismissed, all claims joined under Rule 18 must also be dismissed." *Id.* § 18.02[2][c]; *see, e.g.*, *Friedman v. Hartmann*, 787 F. Supp. 411, 423 (S.D.N.Y. 1992) (dismissing additional claims brought under Rule 18(a) on the basis that the underlying qualifying claim failed to state a claim upon which relief could be granted and therefore could not serve as the basis for the joinder of the unrelated claims).

In applying these principles here, we conclude that the dismissal of Nelson's remaining fifteen crossclaims was proper. As discussed above, all three of his crossclaims that met the requirements of Rule 13(g)—his qualifying claims—fail as a matter of law based on res judicata. Although we acknowledge that a purpose of Rule 18(a) is to provide for the liberal joinder of claims, the ability to join claims under this Rule is not limitless. We therefore adopt the federal approach by rejecting an interpretation of Rule 18(a) that would permit claims asserted by a crossclaimant against a co-defendant that are unrelated to the plaintiff's original action to remain viable once the crossclaimant's qualifying claim or claims against the co-defendant as required by Rule 13(g) have been dismissed at the pleading stage. A ruling to the contrary would be inconsistent with the purpose underlying Rule 13(g)'s prerequisite for the assertion of crossclaims in the first place.

---

federal courts with respect to the Rules of Civil Procedure, "[d]ecisions under the federal rules are . . . pertinent for guidance and enlightenment in developing the philosophy of the North Carolina rules." *Turner v. Duke Univ.*, 325 N.C. 152, 164, 381 S.E.2d 706, 713 (1989).

Finally, we address Nelson's contention that even assuming the dismissal of his crossclaims was, in fact, appropriate, the dismissal should have been without prejudice. Rule 41(b) of the North Carolina Rules of Civil Procedure, which governs the involuntary dismissal of actions, states that—subject to three exceptions not applicable here—"[u]nless the court in its order for dismissal otherwise specifies, a dismissal under this section and *any dismissal not provided for in this rule* . . . operates as an adjudication upon the merits." N.C.G.S. § 1A-1, Rule 41(b) (emphasis added). This Court has held that this Rule vests trial courts with the discretion to dismiss claims without prejudice. *Whedon v. Whedon*, 313 N.C. 200, 213, 328 S.E.2d 437, 445 (1985) ("The trial court's authority to order an involuntary dismissal without prejudice is therefore exercised in the broad discretion of the trial court and the ruling will not be disturbed on appeal in the absence of a showing of abuse of discretion.") A discretionary ruling by the trial court will be overturned for abuse of discretion "only upon a showing that its ruling was manifestly unsupported by reason and could not have been the result of a reasoned decision." *Friday Invs., LLC v. Bally Total Fitness of the Mid-Atl., Inc.*, 370 N.C. 235, 241, 805 S.E.2d 664, 669 (2017).

Based on our thorough review of the lengthy record in this case, we are unable to say that the Business Court's decision to dismiss Nelson's crossclaims with prejudice constituted an abuse of discretion. For over thirty years, Nelson—and, at times, his wife and business entities that he controlled—has been engaged in various

legal proceedings involving his debts to Orlando. *See Orlando Residence LTD v. GP Credit Co., LLC*, 553 F.3d 550, 553–54 (7th Cir. 2009). In 2009, the United States Court of Appeals for the Seventh Circuit stated that "[t]he time has come to put an end to the defendants' stubborn efforts to prevent Orlando from obtaining the relief to which it is entitled." *Id*. at 559. At the suggestion of the Seventh Circuit, the United States District Court for the Eastern District of Wisconsin entered a "bill of peace" order enjoining Nelson, his wife, and a business entity found to be the alter ego of Nelson from filing any further legal actions or claims against Orlando without prior approval of the court given Nelson's "well-established" history of attempts to "evade Orlando's collection efforts." *Orlando Residence LTD v. GP Credit Co.*, 609 F. Supp. 2d 813, 817 (E.D. Wis. 2009).

Moreover, for almost a decade, Nelson and the Alliance Defendants have been engaged in a seemingly never-ending process of litigation over Nelson's membership interests and rights with respect to Alliance. It was not unreasonable for the Business Court to determine that Nelson's crossclaims should be dismissed with prejudice in an effort to bring some measure of finality between the parties. Accordingly, we conclude that the Business Court did not abuse its discretion.

## Conclusion

For the reasons set out above, we hold that the dismissal of Nelson's crossclaims was proper.

MODIFIED AND AFFIRMED.

Justice MORGAN took no part in the consideration or decision of this case.